In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2225

BAJRAM BEGZATOWSKI,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals
A72 671 697

ARGUED NOVEMBER 29, 2001--DECIDED January 11, 2002


   Before COFFEY, EASTERBROOK and RIPPLE,
Circuit Judges.

   RIPPLE, Circuit Judge.  Petitioner Bajram
Begzatowski seeks review of an adverse
decision of the Board of Immigration
Appeals (the "BIA" or "Board") denying
his requests for asylum and withholding
of deportation./1 For the reasons set
forth in the following opinion, we grant
the petition for review, reverse the
judgment of the BIA and remand for
further consideration.

I

BACKGROUND

A.  Facts

   Mr. Begzatowski is an ethnic Albanian
from Kicevo, in the Former Yugoslav
Republic of Macedonia ("Macedonia"). He
attended school in Kicevo until the
eighth grade. At that time, all of the
Albanian schools were closed. Mr.
Begzatowski then moved to Switzerland and
lived with an uncle. He returned to
Yugoslavia in November 1990, and shortly
thereafter was inducted into the
Yugoslavian army.
   Mr. Begzatowski painted a grim picture
of his military experiences. Albanians
were segregated from other soldiers;
their barracks were small and
overcrowded. They were not given regular
access to bathing facilities and went

without showers for over a month. During basic training, Albanian soldiers had to rise earlier than the Serbians in their unit, they were not issued bullets nor were they given training on a firing range.

According to Mr. Begzatowski's testimony, Albanian soldiers suffered from more than just inadequate facilities and training. Serbian officers would wake the Albanian soldiers in the middle of the night and threaten them with harm if they did not follow orders. These were not idle threats; the officers physically assaulted the Albanian soldiers, but left the Serbian soldiers alone. The Yugoslavian army did not issue bullets to the Albanian soldiers for use in battle; Serbian soldiers, however, were provided with ammunition. Albanians also were deprived of shovels to use to dig themselves in and get out of harm's way. Finally, the Albanians were forced to precede the Serbian soldiers into battle. To ensure that Albanian soldiers cooperated, Serbian soldiers followed at a distance of two to three meters with their guns drawn.

After enduring this treatment for several months, Mr. Begzatowski deserted,/2 went into hiding and later fled the country. Mr. Begzatowski eventually entered the United States by way of Mexico. Shortly after he arrived, he filed an administrative application for asylum.

B.   Administrative Proceedings

1.

On March 10, 1994, an Order to Show Cause was issued and charged Mr. Begzatowski with deportability. At hisdeportation hearing, Mr. Begzatowski conceded deportability, but requested that the Immigration Judge ("IJ") grant him asylum or withholding of deportation. After a hearing, the IJ found Mr. Begzatowski's testimony credible in almost all respects./3 He also noted that the discrimination described by Mr. Begzatowski had been documented by reputable organizations. However, the IJ determined that the degree of "discrimination" Mr. Begzatowski endured did "not rise to the level necessary to be considered persecution." R.48.

2.

More than five years after the IJ issued his decision, a split panel of the BIA affirmed. The majority found Mr. Begzatowski's testimony "credible in its entirety." R.3. It specifically noted that Mr. Begzatowski "routinely suffered physical mistreatment and was put in harm's way on account of his ethnic and religious background." Id. However, relying on this court's decision in Meghani v. INS, 236 F.3d 843 (7th Cir. 2001), the BIA stated that "'unpleasant and even dangerous conditions do not necessarily rise to the level of persecution.'" R.3 (quoting Meghani, 236 F.3d at 847 (internal quotation marks and citations omitted)). Therefore, like the IJ, it determined that "without more, we cannot conclude that the treatment suffered by the respondent rises to the level of persecution." R.3./4

The dissenting member of the BIA stated that he believed that Mr. Begzatowski's testimony established past persecution on the basis of his ethnic background. He further stated that there was not sufficient evidence in the record to determine if the presumptive fear of future persecution had been rebutted. For that reason, he stated, he would remand the matter to the IJ for additional findings.

Mr. Begzatowski timely appealed the adverse decision of the BIA.

II

ANALYSIS

A.   Standard of Review

We review the BIA's asylum determination under the substantial evidence test. See Petrovic v. INS, 198 F.3d 1034, 1037 (7th Cir. 2000). We shall disturb the BIA's findings "only if the record lacks substantial evidence to support its factual conclusions." Malek v. INS, 198 F.3d 1016, 1021 (7th Cir. 2000). However, we review the BIA's legal analysis de novo. See Marquez v. INS, 105 F.3d 374, 378 (7th Cir. 1997).

B.   Past Persecution

Mr. Begzatowski contests the BIA's finding that his experiences in the former Yugoslavia, and specifically in the Yugoslavian army, did not rise to the level of persecution. Specifically, he points to the fact that he was sent into battle without bullets and suffered other abuses while in military service. We evaluate Mr. Begzatowski's claim below.

To prove that he is a "refugee" within the meaning of the Immigration and Nationality Act ("INA"), 8 U.S.C. sec. 1101(a)(42), and therefore entitled to asylum, Mr. Begzatowski "must come forward with evidence either of a well-founded fear of future persecution or of past persecution. If an alien establishes past persecution, there is a rebuttable presumption that he also has a well-founded fear of future persecution and therefor should be granted asylum." Ambati v. Reno, 233 F.3d 1054, 1059-60 (7th Cir. 2000). "Although there is no statutory definition of persecution, we have described it as punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." Roman v. INS, 233 F.3d 1027, 1034 (7th Cir. 2001) (internal quotation marks and citations omitted). "Persecution encompasses more than threats to life or freedom; non-life threatening violence and physical abuse also fall within this category." Tamas-Mercea v. Reno, 222 F.3d 417, 424 (7th Cir. 2000). However, to sustain an asylum application, the conduct "must rise above mere harassment." Roman, 233 F.3d at 1034. Types of actions that might cross the line from harassment to persecution include: "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." Mitev v. INS, 67 F.3d 1325, 1330 (7th Cir. 1995).

As stated above, in assessing an asylum application, we owe deference to the factual findings of the BIA. In the present action, the BIA credited Mr. Begzatowski's testimony concerning the harms that he suffered in the Yugoslavian military./5 Specifically, the BIA accepted that Mr. Begzatowski was deprived of bathing facilities, denied adequate military training, experienced physical abuse by the Serbian officers

and was sent to the front lines of battle without either bullets or a shovel. Furthermore, the BIA did not question that Mr. Begzatowski's mistreatment was a result of his Albanian ethnicity. Consequently, the only issue before us is whether the events described by Mr. Begzatowski constitute persecution for purposes of the INA.

This court has defined persecution as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." Roman, 233 F.3d at 1034 (internal quotation marks and citations omitted). We believe that the mistreatment endured by Mr. Begzatowski clearly falls within this category. Mr. Begzatowski described a series of actions by the Yugoslavian army meant to humiliate and eliminate Albanian soldiers. Albanian soldiers were not treated like their Serbian counterparts; they were segregated, physically abused, deprived of bathing facilities and denied training. Far more importantly, they were forced into battle without ammunition and were deprived of other implements, such as shovels, that were important to their survival. We believe that these actions cannot be seen as anything but "punishment" or "infliction of harm." Furthermore, these are not merely petty abuses that we would expect the BIA to excuse or ignore. The Albanian soldiers' only purpose, it appears, was to provide a human shield for Serbian soldiers. These actions rise above the level of "mere harassment" and constitute persecution.

The BIA does offer some explanation why it believed that Mr. Begzatowski's experiences did not constitute persecution. First, it states that Meghani v. INS, 236 F.3d 843, 847 (7th Cir. 2001), stands for the proposition that even dangerous conditions do not necessarily rise to the level of persecution. However, Meghani did not address the situation presented here--a segment of the population being forced into life-threatening situations on the basis of their ethnicity. Put in context, the quote from Meghani on which the INS relies addresses a very different situation; in that case, we stated:

"[C]onditions of political upheaval which

affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum." Indeed, we have "recognized the hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution."

Id. (quoting Mitev, 67 F.3d at 1330-31). In other words, if war, famine, political violence or other dangerous conditions affect an entire nation, those conditions cannot establish an individual claim for asylum. In the present case, however, the undisputed evidence established that the Yugoslavian government singled out an ethnic group for abuse.

In addition, the BIA seemed to focus on Mr. Begzatowski's lack of permanent injury as a basis for denying his asylum application. Mr. Begzatowski, it stated, "did not suggest that he suffered any harm as a result of the treatment or the situations that he was subjected to." R.3. However, we previously have rejected attempts by the BIA to impose on asylum applicants the additional burden of establishing permanent or serious injuries as a result of their persecution. See Asani v. INS, 154 F.3d 719, 722-23 (7th Cir. 1998)./6 We see no reason to revisit the standard.

C.  Presumption of Future Persecution

Because Mr. Begzatowski has established past persecution on the basis of his ethnicity, there is a rebuttable presumption that he also has a well-founded fear of future persecution necessary for a grant of asylum. See Ambati, 233 F.3d at 1060. The burden then "shifts to the immigration authorities to prove [he] has no well-founded fear of further persecution." Galina v. INS, 213 F.3d 955, 957 (7th Cir. 2000). Specifically, "the presumption may be overcome by evidence indicating that the alien no longer is in danger of being persecuted again due to changed conditions in the home country." Asani, 154 F.3d at 722 (citing 8 C.F.R. sec. 201.13(b)(1)(I)).

The BIA need not wait for the INS to proffer evidence of changed country conditions. We previously have recognized the authority of the BIA to take

"official notice of uncontroverted facts concerning political conditions in asylum seekers' home countries." Kaczmarczyk v. INS, 933 F.2d 588, 593 (7th Cir. 1991). However, in doing so, the BIA must treat sources of current information, especially State Department country reports, "with a healthy skepticism,rather than, as is its tendency, as Holy Writ." Galina, 213 F.3d at 959.

The INS argues that the BIA engaged in this analysis and determined, based on the current State Department country report, that the situation in Macedonia had improved to such a point as to remove any fear that Mr. Begzatowski might be persecuted upon his return. We do not believe that this is a fair reading of the BIA's opinion.

The BIA did not find that Mr. Begzatowski had established past persecution. Therefore, it did not shift the burden to the INS to come forward with evidence of changed country conditions, nor did it consider sua sponte whether those conditions had changed sufficiently to diffuse Mr. Begzatowski's well-founded fear of future persecution. Having found no past persecution, the BIA focused only on Mr. Begzatowski's actions since his departure from Macedonia to determine whether he had a well-founded fear of future persecution. It stated:

The respondent claims to have a well-founded fear of persecution because of his participation in an Albanian nationalist group in the United States and because his participation in that group is known to the Macedonian government. In order to determine whether that basis for the respondent's fear does in fact provide an objective basis to fear persecution in Macedonia, we have examined the documentation of record, as well as the 1999 Country Reports on Human Rights Practices . . . . Based upon the information contained in that report which reflects changed country circumstances since the respondent's departure from his country of origin, we cannot conclude that he has a well-founded fear of persecution in Macedonia.

R.4 (emphasis added). The BIA addressed only the issue of whether Mr. Begzatowski

likely would be persecuted for participating in pro-Albanian rallies in the United States. This issue has little, if any, bearing on whether the current State Department country report provides sufficient detailed information to rebut the presumption of future persecution arising from Mr. Begzatowski's experiences in the Yugoslavian army. Because the BIA did not consider whether the country conditions in Macedonia rebut the presumption that Mr. Begzatowski will suffer future persecution in that country, we remand the case to the BIA for consideration of this issue.

Conclusion

For the foregoing reasons, the petition for review is granted, and the judgment of the BIA is reversed and remanded for further proceedings consistent with this opinion.

PETITION FOR REVIEW GRANTED; REVERSED AND REMANDED

FOOTNOTES

/1 The application in this case was filed prior to April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104-208, 110 Stat. 3009, and therefore, as did the Board, we employ the terminology of the former statute.

/2 Friends of Mr. Begzatowski also deserted; however, they were found, jailed and returned to the army.

/3 The IJ stated: "With respect to the respondent's credibility, while the respondent has testified to a battle in which he was sent to fight without any bullets, that experience does not raise any questions in my mind. However, the respondent did indicate that he was sent to the battle front while Serbian soldiers were a few meters behind him and the respondent was engaged in this battle for a period of approximately two to three months without any bullets and to his knowledge, no Serbian soldiers were killed while Albanians were. I can credit the possibility that for discriminatory and persecution purposes soldiers could be denied bullets, but the fact that the respondent was sent to the battle front for two to three months without any bullets and without being killed or shot raises credibility questions in my mind. Other than this issue, I essentially would credit the testimony of the respondent." R.47.

/4 The BIA also determined that Mr. Begzatowski did not have a well-founded fear of future persecution based on his participation in pro-Albanian rallies while in the United States. Mr. Begzatowski does not take issue with this portion of the BIA's decision.

/5 In its brief, the INS argues that Mr. Begzatowski is constrained by the credibility determinations of the IJ because those determinations were not identified as a basis for his appeal to the BIA. We disagree. We believe that Mr. Begzatowski's notice of appeal more than adequately apprised the Board of his lack of faith in the factual findings of the IJ. His notice states: "The Immigration Judge arbitrarily, capriciously and incorrectly concluded that the Respondent hadn't established prejudice at the hands of the pertinent government authority sufficient to establish his 'eligibility' for the relief being sought, in light of the evidence and testimony offered of Record clearly establishing the same." R.35. The BIA is not bound by the credibility determinations of the IJ; it may review the record and make its own assessments. See Hazime v. INS, 17 F.3d 136, 140 (6th Cir. 1993) (stating that "'the Board is not required to defer to an immigration judge's findings of fact or conclusions of law in a deportation/waiver case, and may if it chooses to do so, review the record de novo'" (internal citations omitted)); Charlesworth v. United States INS, 966 F.2d 1323, 1325 (9th Cir. 1992) ("The Board is not required to defer to the immigration judge's findings and conclusions."). Moreover, absent the BIA adopting the findings of the IJ--which clearly did not occur here--we review the determinations, including the credibility determinations, of the BIA, not the IJ. See Gonzalez v. INS, 77 F.3d 1015, 1023 (7th Cir. 1996).

/6 In Asani v. INS, 154 F.3d 719 (7th Cir. 1998), we stated:

[T]he BIA apparently believed that Asani was not subject to past persecution because he had not "suffered any physical or psychological harm" from his mistreatment by the Yugoslavian authorities and because he did not receive "serious injuries" when he was beaten by the police. However, this is not the standard recognized by this Court. While the Immigration Act does not provide a definition for the term "persecution," we have defined it as "'punishment' or 'the infliction of harm' which is administered on account of . . . race, religion, nationality, group membership, or political opinion . . . ."

Id. at 723 (internal citations omitted). Because

the BIA applied an incorrect and more stringent standard to Asani's application, we remanded the case to the BIA.