**Azim TUHIN, Petitioner,**

v.

John D. ASHCROFT,* Respondent.

No. 02–2661.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 11, 2003.**

Decided March 18, 2003.

Before EASTERBROOK, ROVNER,
and EVANS, Circuit Judges.

ORDER

Azim Tuhin, a thirty-year old native and citizen of Bangladesh, was arrested in 1994 by Bangladesh police in connection with a political protest. During his ensuing detention, the police repeatedly beat Tuhin, warning him to cease his political activism. Fearing future reprisals, Tuhin fled his homeland. He entered this country without inspection, and the INS placed him in deportation proceedings. Tuhin conceded his deportability but applied for political asylum, withholding of deportation, and alternatively, voluntary departure. After an evidentiary hearing, an Immigration Judge ("IJ") denied all three forms of relief, based primarily upon a flawed conclusion that Azim sought to avoid "prosecution" not "persecution" by the Bangladesh government. The Board of Immigration Appeals ("BIA") summarily affirmed, and Tuhin petitions for review. Because we are not confident that the IJ fully considered Tuhin's asylum claim, we vacate and remand for further consideration.

Background

Bangladesh has been marred by political unrest and violence since its inception in

---

* The petition for review correctly identified the Immigration and Naturalization Service (INS) as the respondent in this case. *See* 8 U.S.C. 1105a(a)(3) (1994). On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice and its functions were transferred to the newly formed Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, 110 Stat. 2135 (Nov. 25, 2002). This petition for review challenges the decisions of the Executive Office for Immigration Review (Board of Im-

migration Appeals and immigration court), which, at present, still is a component of the Department of Justice. Attorney General John D. Ashcroft, is the head of the Department of Justice. The Attorney General, therefore, is substituted as respondent for the INS in the caption.

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

1971. Three main political parties vie for control of the country's government—the Bangladesh Nationalist Party ("BNP"), the Awami League, and the Jatiya Party. Tuhin's testimony, which the IJ found credible in its entirety, was that he joined the student wing of the Jatiya Party in 1988, and the following year, the party made him a secretary for his hometown of Khulna. As party secretary for Khulna, Tuhin organized rallies and recruited other students to join. Two years after Tuhin became a party secretary, the BNP seized control of the government from the Jatiya Party and jailed then-president General H.M. Erstad on corruption charges. After the BNP took over, its members disrupted Jatiya Party meetings and rallies, often with help from the police.

In February 1994 Tuhin organized a march to protest General Erstad's incarceration. By then, Tuhin testified, he was a well-known Jatiya Party leader in Khulna. Approximately fifty to seventy-five Jatiya members participated in the march. Tuhin marched in the front along with other party leaders and did not carry any weapons, but demonstrators in the rear armed themselves with sticks and stones for protection. Halfway through the march, police surrounded the demonstrators, who began throwing stones and smashing nearby car windows with their sticks. The police then attacked. In the melee that ensued, the police apprehended Tuhin and several of his companions. A group of five or six officers kicked Tuhin and hit him with their batons; Tuhin was beaten again at the police station. During the beatings the police warned him to cease his political activism in the Jatiya Party. The next day, Tuhin was brought before a judge and charged with violating Bangladesh's Special Powers Act and Anti–Terrorism Act for allegedly destroying property, looting, and carrying a weapon. Tuhin denies these allegations. Tuhin spent the next month in jail, where he was beaten on seven to ten more occasions; each time his jailers demanded that he renounce the Jatiya Party.

Tuhin ultimately was released on bond, and shortly thereafter fled Bangladesh. He arrived in the United States four months later and applied for political asylum. His initial pro se application was denied, and in May 1996, the INS ordered Tuhin to show cause why he should not be deported for entering the country without inspection. At his hearing before the IJ in January 1998, Tuhin renewed his asylum request with the assistance of counsel. Tuhin testified that, since his departure, the police questioned his parents regarding his whereabouts. He believes that if returned to Bangladesh he will surely face renewed arrest, incarceration, torture, and possibly execution for his alleged crimes. In addition to his own testimony, he submitted affidavits, medical reports documenting injuries caused by the police beatings, and copies of his charging papers, as well as state department and international human rights reports and news clippings discussing Bangladesh's political climate. He also asked the IJ to withhold deportation, or alternatively, allow him to depart voluntarily.

In an oral decision announced immediately following the hearing, the IJ "fully credited" Tuhin's testimony but went on to deny asylum based on a "legal conclusion that [Tuhin] is not fleeing persecution but prosecution." (Admin. R. at 79.) The IJ reasoned that Tuhin was "liable as an accomplice for the acts taken by his organization," and as such, "the country of Bangladesh would have the right to prosecute [him] for having engaged in criminal activity." (Admin. R. at 80.) The IJ also mentioned that Tuhin admitted to having hurled stones at opposing party offices on three previous occasions. Although that

fact did not exclude him from asylum eligibility, the IJ stated, "this court will consider that fact in determining how to exercise discretion." (Admin. R. at 81.) The IJ then denied Tuhin's requests for asylum, withholding of deportation, and voluntary departure, and ordered him deported. Tuhin appealed the IJ's order to the BIA, which affirmed the judgment without opinion in May 2002. This timely petition for review followed.

## Analysis

Tuhin challenges the IJ's denial of his requests for asylum and withholding of deportation. Because a petitioner who fails to establish eligibility for asylum necessarily cannot satisfy the more exacting standard for withholding of deportation, we focus first on Tuhin's asylum claim. *Toptchev v. INS,* 295 F.3d 714, 720 (7th Cir.2002). We review an asylum determination under the substantial evidence test. *Begzatowski v. INS,* 278 F.3d 665, 668 (7th Cir.2002). Applying that test, we assess whether the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and will reverse only if the evidence compels a contrary conclusion. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). When, as here, the BIA summarily affirms an IJ's decision, we base our review only on the IJ's analysis. *Mousa v. INS,* 223 F.3d 425, 428 (7th Cir.2000). The BIA's summary affirmance of a flawed decision by an IJ, however, may lead us to conclude that the BIA's decision is insufficient. *Lwin v. INS,* 144 F.3d 505, 508–09 (7th Cir.1998). Indeed, if the IJ's reasoning is inadequate, we cannot uphold it simply because "the Board might have been able to eliminate the flaws and come to the same conclusion." *Angoucheva v. INS,* 106 F.3d 781, 789 (7th Cir.1997) (per curiam). In such a case, we will remand to enable the BIA to properly consider the petitioner's claim. *Id*

To be eligible for asylum, a petitioner must establish that he or she is a refugee under the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1158(b)(1). The INA defines a "refugee" as someone who is unable or unwilling to return to their country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Accordingly, Tuhin had to prove that (1) he has been persecuted in the past based on his political beliefs; or (2) he has an objectively reasonable fear of such persecution in the future. *Toptchev,* 295 F.3d at 720.

The IJ did not examine whether Tuhin demonstrated either of those grounds. Rather, the IJ generally concluded that Tuhin was "fleeing prosecution not persecution" and thus "did not meet his burden of proof and persuasion in connection with his application for asylum." Because Tuhin could have been found guilty of the charged offenses on grounds of vicarious liability, the IJ stated, the prosecution was "reasonable, possibly even legitimate." This conclusion is fatally flawed in several respects.

Most notably, the IJ's conclusion that Tuhin fled a legitimate criminal prosecution and not political persecution misses the entire point of Tuhin's asylum claim. The gravamen of his claim is that he was harmed, not by the prosecution initiated following his February 1994 arrest, but by being repeatedly beaten by Bangladesh police for his activism on behalf of the Jatiya Party. Although the INA does not define the term, we have repeatedly described "persecution" as "punishment or the infliction of harm for political, reli-

gious, or other reasons that this country does not recognize as legitimate." *Toptchev*, 295 F.3d at 720; *see also Tamas–Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir.2000). The conduct in question need not threaten the petitioner's life or freedom, but it must rise above the level of "mere harassment." *Tamas–Mercea*, 222 F.3d at 424. Conduct that "might cross the line from harassment to persecution include[s]: 'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.'" *Begzatowski*, 278 F.3d at 669 (quoting *Mitev v. INS*, 67 F.3d 1325, 1330 (7th Cir.1995)). Although the charges lodged against Tuhin might have been legitimate, the beatings he suffered at the hands of police were not. *See Senathirajah v. INS*, 157 F.3d 210, 221 (3d Cir.1998) (reversing IJ's denial of asylum based on conclusion that government had legitimate reason to interrogate potential terrorist because "torture does not constitute valid governmental investigation."). We have held that a single episode of serious physical abuse at the hands of government officials may be sufficiently serious to establish past persecution. *Asani v. INS*, 154 F.3d 719, 725 (7th Cir.1998).

Tuhin contends, as he did before the BIA, that the IJ failed to consider his claim that the police beatings constituted past persecution. Indeed, our review of the IJ's decision reveals no analysis of whether the beatings that Tuhin endured rose to the level of political persecution. While the IJ need not "write an exegesis" on every contention a petitioner raises, the judge "must articulate [his or her] reasons for rejecting evidence favorable to a petitioner." *Dobrota v. INS*, 195 F.3d 970, 974 (7th Cir.2000). Here, despite fully crediting Tuhin's testimony, the IJ did not mention the beatings in rejecting the asylum claim. It is unclear whether the judge determined that the beatings were not suf-

ficiently serious to constitute persecution, whether they were not imposed on account of Tuhin's political opinion, or whether the IJ just disregarded the evidence altogether. In any case, without some reasoned explanation by the IJ for rejecting Tuhin's past persecution claim, we cannot uphold the decision.

Moreover, the IJ's "legal" conclusion that Tuhin filed "prosecution" not "persecution" seems to be based on a fundamental misunderstanding of the law. The two terms are not mutually exclusive. A facially legitimate prosecution may amount to persecution if the prosecution was motivated by a "nefarious purpose," i.e., to punish political opinion, *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir.1996), and the punishment under the law is sufficiently severe, *Lin v. INS*, 238 F.3d 239, 244 (3d Cir.2001) (Chinese student who demonstrated during Tiananmen Square era and was sought by Chinese police under lawful subpoena for trespass had well-founded fear of persecution, not just prosecution); *Chang v. INS*, 119 F.3d 1055, 1061–62 (3d Cir.1997) (fact that petitioner violated Chinese security laws of general applicability did not preclude finding that prosecution under laws would constitute persecution); *Rodriguez–Roman v. INS*, 98 F.3d 416, 429 (9th Cir.1996) (Cuban who would face severe punishment under Cuban law for having illegally departed had well-founded fear of persecution on account of his political opinion). Tuhin asserted that he was targeted for prosecution because of his leadership role in the Jatiya Party. In support of this assertion, he pointed to the police beatings and threats that accompanied his arrest and human rights reports suggesting that the sweeping laws under which he was charged were frequently used to punish political expression and that the punishments under those laws were severe, ranging from five years to death

for minor offenses such as obstructing traffic. The IJ, however, did not address any of that evidence, focusing instead solely on the facial legitimacy of the charges.

"Agencies must respond to the arguments made to them and avoid decisions based on irrelevancies." *Hengan v. INS*, 79 F.3d 60, 64 (7th Cir.1996). Instead of responding to Tuhin's past persecution argument, the IJ discussed, at length, the irrelevant fact that Tuhin had engaged in past destructive behavior. Specifically, the IJ suggested that because Tuhin admitted to having thrown stones at offices of opposing political parties during three demonstrations five years earlier, he might be excluded from asylum eligibility as a persecutor himself:

> In order to be considered a refugee under the Act, an individual could not have participated in the persecution of others on account of race, religion, nationality, membership in a particular social group, or political opinion.... In 1989, it is the respondent's testimony that on three to four occasions, he hurled stones at the offices of opposition political parties.... He indicated that this was a way of life in Bangladesh. While it is unclear whether respondent actually harmed anyone by virtue of his stone throwing, it is clear that he knew or should have known that physical injury to someone was a very real possibility as a result of his acts.

(Admin. R. at 80–81.) The IJ went on to conclude, rightly we think, that these facts would not suffice to establish that Tuhin engaged in "persecution." But the IJ then stated that he would consider them nonetheless:

> While the record does not clearly support the notion that the respondent participated in the persecution of others because of their opposition party belief, this Court will consider that fact in de-

termining how to exercise discretion. In conclusion, after having reviewed the evidence in this case very carefully with respect to the respondent's role in various demonstrations in Bangladesh, including February 1994, I find that the respondent has failed to establish his burden of proof and persuasion in connection with his application for asylum.

(Admin. R. at 81.) The IJ's latter statements suggest that his observations concerning Tuhin's "role in various demonstrations" indeed impacted his decision to find Tuhin ineligible for political asylum. Such evidence, although arguably relevant to the exercise of discretion, is irrelevant to the question of eligibility. The IJ should have been asking whether or not the Bangladesh authorities had persecuted Tuhin for his political beliefs in connection with his 1994 arrest and beatings.

The IJ's failure to address that question was not insignificant. Although the Attorney General must withhold deportation only if the petitioner demonstrates a "clear probability" that his "life or freedom would be threatened in [his or her native] country on account of race, religion, nationality, membership in a particular social group or political opinion," see 8 U.S.C. § 1253(h)(1)(1994); *INS v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), a finding of past persecution would give rise to the presumption that Tuhin's fear of future persecution was well-founded, see *Begzatowski*, 278 F.3d at 671. The burden then would shift to the INS to rebut that presumption with evidence that conditions in Bangladesh have changed to such an extent that further persecution is unlikely. *Id.* The INS has not come forward with any evidence of changed conditions. Thus, we cannot be sure whether, or how, the BIA might exercise its discretion if Tuhin's claim of past persecution

were fully considered and irrelevant considerations discarded.

For these reasons, we GRANT the petition for review, VACATE the BIA's judgment, and REMAND for further proceedings consistent with this order. Accordingly, we need not consider Tuhin's arguments regarding voluntary departure and Article III of the United Nations Convention Against Torture.