**Xiao Dong WANG, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Attorney General Ashcroft, Respondent.**

**Docket No. 02–4261.**

United States Court of Appeals, Second Circuit.

June 3, 2003.

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Jeanette A. Vargas, Assistant United States Attorney, New York, NY, for respondent, (James B. Comey, United States Attorney for the Southern District of New York, on the brief; Kathy S. Marks and Gideon A. Schor, Assistant United States Attorneys, of counsel).

Present: KEARSE, STRAUB, and RAGGI, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for review is DENIED.

Petitioner Xiao Dong Wang ("Wang") a citizen of the People's Republic of China ("China"), petitions this Court for review of the June 7, 2002 decision of the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the May 4, 1999 decision of the Immigration Judge ("IJ") denying Wang's application for asylum, withholding of removal, and voluntary departure pursuant to 8 U.S.C. §§ 1158(a) and 1231(b)(3). Wang argues that the BIA erred in concluding that he failed to establish past persecution or a well-founded fear of future persecution based on his participation in two pro-democracy student demonstrations in Fujian Province during May 1989 and his support for the pro-democracy movement in China. *See* 8 U.S.C. § 1101(a)(42)(A).

We review the BIA's factual findings under the substantial evidence standard, and will "reverse only if no reasonable fact-finder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner's burden." *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000). Because the BIA summarily affirmed the IJ's opinion, we look to the underlying findings made by the IJ. *See Arango–Aradondo v. INS*, 13 F.3d 610, 613 (2d Cir.1994); *Mousa v. INS*, 223 F.3d 425, 428 (7th Cir.2000).

While the IJ credited Wang's testimony that he had been punished for participating in the student demonstrations by being stripped of his class presidency, barred from taking college entrance exams, and hindered in his post-graduation job search by the negative reference letter he received from his high school, the IJ concluded that such punishment did not constitute past persecution. Although the incidents which Wang recounts may be regrettable and were no doubt demoralizing, Wang was never physically harmed, arrested, or threatened with further investigation. Under these circumstances, the IJ's conclusion that Wang had not successfully demonstrated past persecution is supported by substantial evidence and must be upheld. *See, e.g., Begzatowski v. INS*, 278 F.3d 665, 669 (7th Cir.2002) (noting that although the term "[p]ersecution encompasses more than threats to life or freedom" punishment "must rise above mere harassment" to constitute persecution) (internal quotations omitted); *Guan Shan Liao v. United States Dep't of Justice*, 293 F.3d 61, 70 (2d Cir.2002) (applicant must show substantial economic disadvantage to establish persecution on the basis of economic deprivation).

Relying on the same evidence, the IJ also concluded that Wang had not established an objectively reasonable fear of future persecution. Although Wang participated in various pro-democracy demonstrations and was questioned afterwards, he was not a leader in the student democracy movement and it was unclear why the Chinese government would target him for political persecution. Indeed, Wang testified that he was permitted to complete his high school education, and although he apparently had trouble finding a job after graduation, he looked for employment for only a few months before leaving China.[*]

Wang did submit a letter from his mother indicating that public security officials visited his home after learning of his involvement in the student protests. The officials allegedly became angry after learning that Wang had illegally entered the United States. But other than confiscating Wang's ID card and cancelling his household registration, the officials took no further action to threaten Wang or indicate that he would be singled out for political punishment. *Cf. Li Wu Lin v. INS,* 238 F.3d 239 (3d Cir.2001) (student participant in the 1989 pro-democracy protests established a well-founded fear of persecution where a subpoena had been issued for his arrest, his classmates had been arrested and sentenced to hard labor, and government officials repeatedly questioned his mother about his whereabouts).[**]

In summary, because substantial evidence supports the IJ's conclusion that Wang has not established eligibility for asylum by demonstrating past persecution or a well-founded fear of future persecution, the petition for review is DENIED.[***]

---

[*] As the IJ pointed out, there was scant objective evidence in the record suggesting that Wang would be permanently barred from pursuing higher education or obtaining gainful employment.

[**] Wang also claims that he would be subject to persecution because of his family's class background. However, the record does not fully support Wang's claim. The State Department's 1998 Country Conditions Report notes that "[t]he political environment of China today is significantly different from that of the 1950's and 1960's, and we are not aware of any citizen, in the last 10 years who has suffered official discrimination because of 'bad class' background."

[***] On appeal to this Court, Wang raises new arguments that were not presented to either the IJ or the BIA below. Accordingly, these arguments are waived. *See Drozd v. INS,* 155 F.3d 81, 91 (2d Cir.1998). Nonetheless, it does not appear that Wang is entitled to relief pursuant to the Convention Against Torture, nor is it clear from the record that any punishment for illegal departure which Wang may be exposed to upon return to China will be politically motivated. *See Yang v. McElroy,* 277 F.3d 158, 163 n. 5 (2d Cir.2002) (per curiam) ("[p]ossible persecution for violation of a statute applicable to all citizens would not standing alone constitute a valid basis for asylum").