**Arian SHAHOLLI, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

No. 02–4206.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 27, 2003.

Decided[1] Jan. 14, 2004.

Before RIPPLE, DIANE P. WOOD,
and EVANS, Circuit Judges.

**ORDER**

In March of 1998, Arian Shaholli, a native Albanian, attempted to enter the United States on a false passport that he purchased for $10,000. When he arrived, the false passport was discovered, and Mr.

---

1. This case was originally scheduled for oral argument on October 27, 2003. Circuit Rule 46 requires any attorney who orally argues to be admitted to practice before this court. Counsel for the petitioner was not admitted to Seventh Circuit practice before the date of argument and submitted an incomplete application on the day of argument. Thus, no argument was heard on October 27. We later admitted petitioner's counsel to practice but subsequently decided that oral argument was unnecessary.

Shaholli was placed in deportation proceedings. Mr. Shaholli then filed an application for asylum and withholding of removal and, in the alternative, protection under Article III of the Torture Convention.

At his hearing, Mr. Shaholli presented evidence that he was in fear of persecution if he returned to Albania. He testified that he had attended the Albanian police academy from 1994 to 1997. As a cadet he was assigned to act as a bodyguard to two Democratic Party candidates. In that capacity, he was once surrounded by five people, and a gun was pointed at him. Additionally, Mr. Shaholli testified that Fatos Nano, the leader of the Socialist Party, saw him with the two Democratic Party candidates and that Nano is "a killer." A.R.168.

While Mr. Shaholli was at the academy, Albania saw the collapse of the pyramid schemes, a form of investment that seriously weakened the Albanian economy. Mr. Shaholli helped keep peace during the subsequent riots. Soon thereafter, the Democratic Party lost control of the government, and the Socialist Party took over. After the Socialist Party took over, several of Mr. Shaholli's friends on the police force were transferred. One of these friends told Mr. Shaholli that police who were perceived as a threat were transferred and then killed. That friend had been transferred and was later killed. Mr. Shaholli himself was transferred but was later fired from his job at the end of 1997. Mr. Shaholli testified that, upon termination, he was called a "criminal of Sali Berisha" and was told that he would be dealt with later. A.R.167. Berisha was the former Democratic Party president of Albania.

Mr. Shaholli's father also testified. The Immigration and Naturalization Service ("the INS") had granted Mr. Shaholli's father asylum prior to Mr. Shaholli's arrival in the United States. Mr. Shaholli's father had served as the equivalent of a mayor of a small Albanian town. Although affiliated with the Democratic Party, he had opposed openly Democratic President Berisha in part because of the administration's failure to return lands confiscated during the Communist regime. Mr. Shaholli's father testified that he feared that his son would experience problems with the Socialist Party if he returned to Albania. A former Peace Corps volunteer who stayed with the family during 1996 and 1997 testified that Mr. Shaholli's father was well-known throughout the region as a political figure.

The government presented documentary evidence as to conditions in Albania. The State Department report for Albania indicated that reports of political killings were unconfirmed but that Albania was experiencing "high levels of violent crime." A.R. 463. Other articles discussed gang killings of police officers, corruption in the police force, police rioting after their dismissals in January of 1998, and the lack of law and order.

The immigration judge ("the IJ") found Mr. Shaholli to be removable and denied his request for asylum. He found that Mr. Shaholli had not established either past persecution or a well-founded fear of future persecution. Specifically, the IJ did not believe that Mr. Shaholli's experiences as a cadet in guarding the Democratic Party candidates provided a reasonably objective basis for fear of harm. Nor did Mr. Shaholli establish that he was fired as a result of political affiliation. The IJ also concluded that his father's experiences did not provide a basis for fear of harm, in part because the father's asylum application was granted for fear of persecution by Democratic President Berisha while Mr. Shaholli claimed fear of persecution by the Socialist Party, and in part because the

father's testimony and written submissions in support of his own application for asylum were "inconsistent and hyperbole." A.R.45 n. 2. The Board of Immigration Appeals affirmed without opinion. Mr. Shaholli timely appeals.[2]

## II

## ANALYSIS

In reviewing decisions of the immigration courts, we review conclusions of law de novo, see *Begzatowski v. INS*, 278 F.3d 665, 668 (7th Cir.2002), and findings of fact are treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). When this court receives a case in which the Board of Immigration Appeals ("the BIA") has issued a streamlined, "Affirm Without Opinion," decision, see 8 C.F.R. § 1003.1(a)(7), we review directly the decision of the IJ, see *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir.2003).

### A. Mr. Shaholli's Due Process Rights

■ Mr. Shaholli submits that the streamlined procedure employed by the BIA violated his right to due process of law.[3] Under 8 C.F.R. § 1003.1(a)(7), a single member of the BIA may affirm the decision of the IJ without opinion, if the Board member concludes that the decision is correct and that any errors in the decision are harmless. *See* 8 C.F.R. § 1003.1(a)(7)(ii). That single member must further determine either that "the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation," or that "the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted." *Id.* (A) & (B). We review the IJ's decision directly in a case streamlined by the BIA. *See Georgis*, 328 F.3d at 967. Given the direct review, we have determined that "our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated." *Id.; see also Albathani v. INS*, 318 F.3d 365, 377–79 (1st Cir.2003) (determining that an alien's due process rights were not violated by the BIA's use of the streamlined procedure). Mr. Shaholli's due process claims are therefore rejected.

### B. Well–Founded Fear of Persecution

■ To establish refugee status and qualify for asylum, Mr. Shaholli must establish either "persecution or a well-founded fear of persecution," which is "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Although the harm from persecution is not required to be life-threatening, see *Tamas–Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir.2000), it must be more than harassment, see *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir.2001). Actions such as "detention, arrest, interrogation, prosecution, imprisonment, illegal

2. We note that Mr. Shaholli has filed a motion to reopen in the Board of Immigration Appeals on the grounds of changed circumstances and new evidence. That motion does not affect our review of the current record. *See Man v. INS*, 69 F.3d 835, 837 n. 1 (7th Cir.1995).

3. In his statement of issues, Mr. Shaholli also argues that his equal protection rights were violated. The brief makes no further attempt to establish this claim. This argument is therefore waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

searches, confiscation of property, surveillance, beatings, or torture" may constitute persecution. *Mitev v. INS*, 67 F.3d 1325, 1330 (7th Cir.1995). On the other hand, "conditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum." *Id.* "[U]npleasant and even dangerous conditions do not necessarily rise to the level of persecution." *Id.* at 1331. Additionally, an applicant for asylum cannot rely solely on the persecution of family members to establish eligibility but must independently "show that [the] family's political opinions have been imputed to [him] and that [he] has suffered or will suffer persecution as a result." *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir.2003). Before this court, Mr. Shaholli does not argue that he endured past persecution. Rather, he argues only that he possesses a well-founded fear of future political persecution on the basis of past events and his family's political history.

Mr. Shaholli submits that the IJ erred when it found that he did not possess a well-founded fear of future persecution. Fear of future persecution must be genuine and objectively reasonable. *See Roman v. INS*, 233 F.3d 1027, 1035 (7th Cir.2000) ("To establish a well-founded fear of future persecution, an asylum applicant must show both that the fear is genuine and that a reasonable person in his circumstances would fear persecution."). Assuming that Mr. Shaholli's fear of persecution is genuine, it is evident that he failed to show that his fear was objectively reasonable. First, although Mr. Shaholli guarded members of the Democratic Party for a short time and Fatos Nano, the leader of the Socialist Party, noticed him serving in this capacity, there is no evidence that Nano threatened him. The mere fact that the leader of the Socialist Party saw Mr. Shaholli with Democratic Party candidates does not provide a basis for a well-founded fear of future persecution. *See Useinovic v. INS*, 313 F.3d 1025, 1032 (7th Cir.2002) (noting that past events "may, in some circumstances, be found insufficient or irrelevant and unable to support eligibility for asylum"); *Roman*, 233 F.3d at 1035 (noting that "many of the past incidents identified by [the petitioner] do not rise to the level of persecution under the statute and, thus, cannot form the basis for a well-founded fear of persecution").

There was also evidence that Mr. Shaholli's father protested against Berisha, that he openly advocated the return of confiscated lands, that neither the Democratic Party nor the Socialist Party returned the confiscated property, that he was well-known as a political figure and that he was well-known for his opinions on land policy. Mr. Shaholli presented insufficient evidence, however, to show that his father's political opinions had been imputed to him. *See Ciorba*, 323 F.3d at 545. Indeed, Mr. Shaholli was admitted to the police academy while the Democratic Party was in control; he remained at the academy during President Berisha's administration (after his father left Albania for fear of persecution by Berisha); and he graduated from the police academy and was hired as a police officer after the Socialist Party had taken control. *See* A.R.156. These circumstances indicate that Mr. Shaholli's father's politics had not been imputed to Mr. Shaholli in any detrimental way by either the Democrats or the Socialists.

Finally, Mr. Shaholli testified that a fellow police officer and friend was killed, allegedly out of political motivations. Mr. Shaholli also testified that, around this same time, he was terminated, called a "criminal of Sali Berisha" and was told that he would be dealt with later. Mr.

Shaholli presented no other evidence to support these contentions.[4] The IJ did not believe that the termination and "veiled threats" established a "reasonable possibility of persecution." A.R.53. Furthermore, the IJ noted that Mr. Shaholli's attempted entrance into the United States on the false passport affected his credibility. Specifically, the IJ noted: "This Court refused to accept the respondent's testimony at face value without any other independent corroborative evidence concerning the reasons for his firing from the police or the reasons for his sudden departure from Albania." A.R.54. Even accepting Mr. Shaholli's testimony as true, the evidence is not sufficient to compel a contrary conclusion than that reached by the IJ. Because Mr. Shaholli's evidence is not sufficient to establish a well-founded fear of persecution should he be returned to Albania, we need not review the IJ's credibility determination. We note, however, that such a review is highly deferential. *See Pop v. INS*, 270 F.3d 527, 530–31 (7th Cir.2001). Therefore, on the record before us, we cannot say that the evidence compels a conclusion that Mr. Shaholli possessed a well-founded fear of persecution.

### Conclusion

For the foregoing reasons, the petition for review is denied, and the judgment of the BIA is affirmed.

AFFIRMED

---

4. Although we have cautioned that State Department country reports should be treated with a "healthy skepticism," *see Galina v. INS*, 213 F.3d 955, 959 (7th Cir.2000), we note that the State Department report in the record reveals that, in 1998, Albania was suffering from a high level of violent crime as a result of economic crisis. Although members of the Democratic Party claimed that several killings occurred as a result of political persecution, those reports were unconfirmed.