**Engy Sadek BESHAY, Petitioner–Appellant,**

v.

**Alberto R. GONZALES, Attorney General of the United States,[2] Respondent–Appellee.**

**Docket No. 03–4387.**

United States Court of Appeals, Second Circuit.

Sept. 13, 2005.

cally substituted as Respondent for former Attorney General John D. Ashcroft.

Angela Mehira Gilden, New York, New York., for Petitioner.

Donna Ford, Assistant United States Attorney (Sandra R. Brown, Assistant United States Attorney, on the brief), for Debra W. Yang, United States Attorney for the Central District of California, Los Angeles, California, for Respondent.

Present: McLAUGHLIN, RAGGI, Circuit Judges, RAKOFF, District Judge.[1]

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the petition for review of the February 6, 2003 order of the Board of Immigration Appeals ("BIA") is hereby DENIED and the stay of deportation is hereby VACATED.

---

1. The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

388

Petitioner Engy Sadek Beshay, a citizen of Egypt, asserts that, as a Coptic Christian, she suffered and, if returned to Egypt, would suffer religious persecution from Muslims in her native country. She submits that the BIA erred as a matter of law in summarily affirming a July 26, 2001 decision by an Immigration Judge ("IJ") denying her applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). We assume the parties' familiarity with the facts and the record of proceedings, which we reference only as necessary to explain our decision.

To qualify for asylum, an applicant bears the burden of demonstrating past persecution or a well-founded fear of future persecution on account of specified statutory grounds, including, *inter alia,* religion. *See Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004); *see also* 8 U.S.C. § 1101(a)(42)(A) (2000). For withholding of removal, an applicant "must demonstrate that, if returned to h[er] country, h[er] life or freedom would in fact be threatened on one of the protected refugee grounds." *Zhou Yun Zhang v. United States INS,* 386 F.3d 66, 71 (2d Cir.2004) (citing 8 U.S.C. § 1231(b)(3)(A)). An applicant who fails to establish eligibility for asylum necessarily fails to satisfy the heavier burden for withholding of removal. *See id.* "To qualify under the CAT, an alien must establish that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Islami v. Gonzales,* 412 F.3d 391, 395 (2d Cir.2005) (quoting *Ramsameachire v. Ashcroft,* 357 F.3d at 184).

When, as in this case, the BIA summarily affirms, we directly review the IJ's decision. *See Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). An IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Immigration and Nationality Act § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) (2000); *see Zhou Yun Zhang v. United States INS,* 386 F.3d at 73 & n. 7. We will not disturb the findings of the IJ if they are "supported by 'reasonable, substantial, and probative' evidence in the record when considered as a whole." *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003) *(per curiam)* (quoting *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000)). Applying those principles to this case, we cannot conclude that the record compelled the IJ to find that the problems Beshay had previously encountered in Egypt demonstrated past religious persecution, a well-founded fear of future persecution, or likely future torture in Egypt.

■ Beshay's claim was based largely on various acts of harassment by a Muslim neighbor, his family, and friends, the most egregious of which was rape. Beshay explained that, by thus depriving her of her honor, the neighbor sought to compel her to marry him, in which case, because she was a Christian and he was a Muslim, she would "have to become a [Muslim] like him."

The IJ concluded that Beshay's rape testimony lacked sufficient specificity and credible detail to support her persecution claim. The record reveals that, although Beshay testified in considerable detail regarding the abduction that purportedly preceded her rape, she could not offer direct testimony as to the rape itself because she claimed to have been forcibly sedated before the sexual assault. She testified that it was a doctor who examined her shortly after the attack who revealed to her that she had been violently raped. As the IJ observed, even if Beshay could not reasonably be expected to provide details as to her rape, she could have corroborated her claim in a variety of ways: most obviously, through a medical report

from the examining physician; alternatively, through testimony or an affidavit from her mother (then in the United States), who had spoken with the doctor; also, with a letter from the priest to whom Beshay said she had confided the rape; or, failing all these, by securing a psychological assessment consistent with rape in the United States. In light of Beshay's weak explanations for her inability to secure any such evidence, the IJ was entitled to consider the lack of any corroboration as a factor to be weighed in determining whether plaintiff carried her burden to demonstrate religious persecution through rape. *See Zhou Yun Zhang v. United States INS*, 386 F.3d at 71; *cf. Diallo v. INS*, 232 F.3d at 287 (noting that adverse credibility determination cannot be based solely on the lack of corroboration).

In fact, however, the IJ did not deny Beshay's application for relief from removal simply because her rape claim lacked specificity or corroboration. The IJ noted a more fundamental problem with the record evidence: the lack of a "clear nexus" between the problems Beshay testified she had encountered in Egypt and her religion. Beshay claims that she did establish this nexus through testimony that the neighbor who raped her, as well as his sister, constantly sought to convert her to Islam. The testimony Beshay cites, however, indicates that the conversations were not motivated by religious animus so much as by an attempt to promote—albeit misguidedly—a marriage between Beshay and her neighbor. Thus, the IJ concluded that the escalating problems that Beshay encountered after she spurned her neighbor's advances were more indicative of retaliation for the man's personal disappointment than religious persecution. Supporting this conclusion was Beshay's acknowledgment that no other member of her family encountered any problems in Egypt as a result of being Christian. Although Beshay did testify to one occasion when Muslim fundamentalists cursed and spat at her under circumstances that might have been unrelated to the problem with her neighbor, we cannot conclude that the IJ was compelled to find that such harassment rose to the level of religious persecution necessary to qualify for asylum. *See Tian–Yong Chen v. United States INS*, 359 F.3d 121, 128 (2d Cir.2004) (adopting Seventh Circuit's standard that "persecution in the asylum context ... 'must rise above mere harassment'" and ruling that "physical harm inflicted on an applicant on account of his religious beliefs" may constitute persecution (quoting *Begzatowski v. INS*, 278 F.3d 665, 669 (7th Cir.2002))).

In sum, with full acknowledgment of the seriousness of rape under any circumstances, we nevertheless conclude that substantial evidence in the record supports the IJ's conclusion that Beshay failed to demonstrate past *religious* persecution in Egypt, a well-founded fear of future religious persecution, or likely torture if returned to that country.

Beshay's petition for review of the BIA's February 6, 2003 order affirming the IJ's July 26, 2001 denial of asylum, withholding of removal, and CAT relief is hereby DENIED and the stay of deportation is hereby VACATED.