**Ilja OBUHOVS (Husband), Galina Oboukhova (Wife), Konstantins Obuhovs (Minor), Petitioners,**

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Respondent.**

**No. 04–0829–AG NAC.**

United States Court of Appeals, Second Circuit.

Jan. 10, 2006.

---

Jack Sachs, New York, New York, for Petitioners.

Cheryl Morgan, Assistant United States Attorney, Office of the United States Attorney for the Eastern District of Kentucky, Lexington, Kentucky, for Respondent.

PRESENT: Hon. JOHN M. WALKER, Jr., Chief Judge, Hon. ROBERT D. SACK, and Hon. B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED AND DECREED that the petition for review is GRANTED and the case remanded to the BIA for further proceedings.

Ilja Obuhovs and Galina Oboukova, husband and wife, and their son, Kostantins Obuhovs, petition for review of the Board of Immigration Appeals ("BIA") January 2004 final order of removal dismissing their appeal from a decision of an immigration judge ("IJ") denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture and ordering them removed to Latvia. We assume the parties' familiarity with the facts, procedural history, and specification of appellate issues and hold as follows:

As a preliminary matter, the petitioners failed to raise their CAT claim in their petition for review and, thus, the claim is waived. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir.2005) (petitioner waived any challenges to the BIA's denial of CAT relief because the issue was not raised in the petitioner's appellate brief).

■ With respect to the petitioners' asylum and withholding of removal claims, because the BIA did not affirm the IJ's adverse credibility finding, the outcome of this appeal hinges on the propriety of the BIA's conclusion that the petitioners, even if credible, had not demonstrated past persecution or a well-founded fear of future persecution. This Court reviews the factual findings of the BIA pursuant to the "substantial evidence standard." *Secaida–Rosales v. INS,* 331 F.3d 297, 306–07 (2d Cir.2003). "Under this standard, [the Court] will not disturb a factual finding if it is supported by 'reasonable, substantial, and probative' evidence in the record when considered as a whole." *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003) (quoting *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000)). Where the BIA's determination is based on an inaccurate perception of the record, omitting potentially significant facts, this Court may remand for reconsideration or rehearing. *See Alvarado–Carillo v. INS,* 251 F.3d 44, 50 (2d Cir.2001).

To the extent that Ilja raises a claim of economic persecution, he admitted that he was capable of supporting himself and his family in Latvia by supplying produce to local vendors and that he is no longer capable of pursuing a career as a professional musician. Accordingly, the BIA did not err in finding that the petitioners had not demonstrated eligibility for asylum on that basis.

However, although the BIA noted that Ilja had been "bruised" by the police during the May 1995 demonstration and briefly detained after the 1996 demonstration, it did not acknowledge his claims that, in 1996, the Zemzargs had hit him in the stomach while calling him a "Russian pig" nor that, during the 1996 demonstration, the police twisted his arms behind his back, grabbed him by the hair, hit him in

the stomach, and called him a "Russian pig." Significantly, at the outset of its decision, the BIA listed each of the potential bases for the petitioners' claims of past persecution. The BIA mentioned that Ilja testified that he had been detained after the 1996 demonstration and the Zemzargs had confiscated his automobile, but did not acknowledge that Ilja claimed to have suffered physical abuse on each of these occasions.

This Court has determined that " 'persecution' in the asylum context means that, although 'the conduct must rise above mere harassment,' the term includes 'more than threats to life or freedom; non-life[-]threatening violence and physical abuse also fall within this category.' " *Tian–Yong Chen v. INS,* 359 F.3d 121, 128 (2d Cir.2004) (quoting *Begzatowski v. INS,* 278 F.3d 665, 669 (7th Cir.2002)). Accordingly, the physical abuse experienced by Ilja falls within the definition of persecution.

In *Tian–Yong Chen,* this Court remanded to the BIA for further proceedings on the basis that the BIA and IJ, in denying the petitioner's application for asylum, ignored the petitioner's testimony that the police had beaten him with their hands on one occasion. *See id.* In so doing, the Court observed that, because the BIA did not consider the petitioner's testimony that he had been beaten, "its decision [was] fatally flawed and [the Court was] unable adequately to consider whether substantial evidence supports the BIA's determination that [the petitioner] failed to establish either past persecution or a well-founded fear of future persecution." *Id.*

In the present case, the BIA likewise neglected to acknowledge Ilja's claims that, in addition to the May 1995 demonstration, he had suffered physical abuse by the Latvian police and military on two subsequent occasions. Accordingly, be-

**48**

cause it appears that the BIA failed to consider potentially significant facts in denying the petitioners' application, we remand the case to the BIA for further consideration of these claims.

 Additionally, with respect to the petitioner's allegations that their neighbor had shot at them on two occasions and that Konstantins had been assaulted by Latvian children, there was substantial evidence to support the BIA's findings that the petitioners merely demonstrated that they had been subjected to discrimination and harassment and had not alleged sufficient involvement or failure to act on the part of the Latvian government. Specifically, although their neighbor was a member of the Latvian military, the petitioners did not establish, or even assert, that he had acted in his official capacity in discharging his firearm into the petitioners' apartment or in shooting at them for playing soccer near his vehicle. Moreover, although no arrest was made, the police promptly responded to Ilja's complaints regarding the incidents. Regarding the assault by the Latvian children, the petitioners did not allege that the Latvian government was involved in the incident nor that the police failed to adequately respond to the petitioners' complaints relating to the incident. Accordingly, the petitioners did not demonstrate that a reasonable fact finder would have been compelled to conclude that these incidents rose to the level of past persecution. However, this Court takes no position on whether these events, when considered in combination with the various alleged assaults on Ilja by the Latvian military and police, may support a finding of past persecution or a likelihood of persecution in the future.

For these reasons, the petition for review is granted and the case remanded to the BIA for further proceedings consistent with this decision.