In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1829

Amin Meghani,

Petitioner,

v.

Immigration and Naturalization Service
and Janet Reno,

Respondents.


Petition for Review of an Order
of the Board of Immigration Appeals.
No. A72-482-978


Argued November 27, 2000--Decided January 3, 2001


Before Bauer, Posner, and Easterbrook, Circuit Judges.

Bauer, Circuit Judge. Amin Sabzaali Meghani ("Meghani"), a Pakistani native and citizen, seeks review of the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") decision to deny his application for asylum and withholding of deportation. We affirm.

BACKGROUND

I. Facts

Meghani became involved in the Pakistan People's Party ("PPP") in 1983, and officially enrolled in 1987. In 1988, he assumed a paid position as Assistant to the Director of Ward 67 in Karachi, Pakistan. As such he opened the office every morning, provided social services to the community, made speeches, and recruited new members. Ward 67, which encompassed an area of 3x3 kilometers, was one of eighteen wards in Karachi. At the time the other predominant party in Karachi was the Mahegir Quami Movement ("MQM").

In June 1988, two PPP members were shot and killed by MQM members at a PPP booth during a religious festival. Luckily for Meghani, he was at lunch when the shooting occurred. That night, MQM members went to the Ward 67 office and beat up PPP members. Meghani's wrist and shoulder were

broken. Meghani did not report the incident to the police because he believed they were ineffective in handling these types of situations, sometimes not investigating reports until days later. Despite this incident, the PPP won a plurality of parliamentary seats in the November 1988 elections, forming a coalition government with the other parties. PPP leader Benazir Bhutto was elected Prime Minister and remained such until August 1990, when her government was constitutionally dissolved by the President. In the October 1990 elections, the Islamic Jamiti Itahid ("IJI") coalition government received the majority in parliament and the PPP became the opposition party.

However, directly after the incident, Meghani fled to Hyderabad, Pakistan, approximately 165 kilometers from Karachi, and sought medical treatment. He stayed in Hyderabad with a friend for one year. On June 29, 1990, Meghani obtained a valid passport and traveled to Bombay, India to stay with an uncle. Despite only having a three-month visa, he remained for one year. In August 1991, he returned to Karachi to live with another uncle, about 14 kilometers from his parent's home. He remained there for eight months before returning to India for six weeks (in May 1992) and re-emigrating to Karachi for another eight months. From there, on February 13, 1993, Meghani left for the United States with a fraudulent passport. Upon entering the United States illegally, Meghani was apprehended by INS and charged with deportability. Meghani admitted deportability, but applied for asylum and withholding of deportation based on his PPP membership. Meghani claimed that he had been persecuted, and that if he returned to Pakistan, he would be persecuted for his prior political involvement and the police would not protect him. Meghani also testified that while he was gone, MQM members often asked his mother when he would return. Believing his life was at risk, Meghani kept himself homebound during the years before heading to the United States.

II. IJ's Decision

At his hearing, Meghani presented the following evidence: (1) his testimony; (2) his valid passport he had used to travel to India twice; (3) two newspaper articles dated February 7, 1990, neither of which mentioned Meghani by name or referred to the beating incident; and (4) a PPP photograph identity card, which was undated and labeled him a "worker." The Department of State, Bureau of Human Rights and Humanitarian Affairs also submitted an advisory opinion, dated July 14, 1993, which concluded that while there were human rights violations in Pakistan against

PPP activists since August 1990, rank and file PPP members were not being systematically mistreated.

On August 24, 1993, the IJ issued its oral opinion. The IJ reasoned that although Meghani introduced a PPP identity card as proof of membership, he did not adduce proof that he was Assistant to the Director of Ward 67. The IJ also found that the fact that Meghani twice returned to Karachi from India without incident undermined his claims. The IJ further noted that the two 1990 articles Meghani submitted were insufficient to support his claims, and that additional corroboration that PPP members were persecuted by the government or by those the government could not control was needed. The IJ interpreted the beating incident as civil unrest between competing political factions, not persecution. The IJ additionally determined that the beating incident was localized to Karachi, and was not an indicator of what would happen to Meghani nationwide. While the IJ noted a discrepancy between Meghani's affidavit (asserting that the beating happened in June 1989) and his testimony (that it occurred in June 1988), the IJ did not find "his account incredible." The IJ, however, denied Meghani's application because Meghani failed to establish either past persecution or a well-founded fear of future persecution.

III.  BIA's Decision

Meghani appealed the IJ's decision in September 1993. On March 7, 2000, some seven years later, the BIA rendered its decision to dismiss Meghani's appeal, affirming the IJ's denial of Meghani's application. The BIA agreed that Meghani failed to satisfy his burden as to past and future persecution. Regarding past persecution, the BIA noted that although Meghani "suffered a traumatic experience," Meghani failed to show he had been persecuted. In so holding, the BIA stated:

We have held that where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided or an explanation should be given as to why such information was not provided. See Matter of S-M-J-, 21 I&N Dec. 722 (BIA 1997); Matter of M-D-, 21 I&N Dec. 1180 (BIA 1998). In the instant case, presumably medical records would exist confirming his injuries. The applicant has not, however, provided any of these documents or explained why the information was not presented.

As to future persecution, Meghani did not

convince the BIA that PPP members were currently targeted for persecution and that the government was unwilling to prevent it. The BIA cited the State Department's advisory opinion, stating that it failed to show that "PPP members are persecuted with impunity in Pakistan." The BIA also agreed that there was no evidence of nationwide persecution. Lastly, the BIA remarked that Meghani never requested protection from Pakistani authorities and there was no proof that the police would not protect him if he returned. Meghani timely filed this appeal.

DISCUSSION

While we review factual determinations under the substantial evidence test, we review de novo interpretations of law. Under the substantial evidence test, we uphold the BIA's decision if it is supported by reasonable, substantial, and probative evidence when looking at the administrative record as a whole. See Ahmad v. INS, 163 F.3d 457, 461 (7th Cir. 1999). We reverse only if the evidence is "'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" Id. (citations omitted).

Meghani styles his first issue as one of law, arguing that the BIA erred in holding that he was required to corroborate his testimony or explain why such corroboration was not forthcoming. He contends that the IJ heard this case before the enunciation of this corroboration rule. Meghani punctuates that the cases cited by the BIA for the corroboration rule, Matter of S-M-J- and Matter of M-D-, were rendered well after his hearing. Therefore, he asks us to reverse and remand so that he can bring forth proof to meet this new evidentiary standard.

We need not address the question of when the corroboration rule emerged because generally a court or agency should apply the law in effect at the time it renders its decision. See Angel-Ramos v. Reno, 227 F.3d 942, 948 (7th Cir. 2000). Thus, even if the corroboration rule was not enunciated until 1997 or 1998 as Meghani contends, it was appropriate for the BIA to apply it to this case. Moreover, Meghani does not contend that he was prejudiced. For instance, he does not suggest that he had corroborating evidence in hand and chose not to present it since he was not required to. It appears that Meghani was neither precluded from putting his best evidence forward at the 1993 hearing, nor from submitting a motion to reopen the case to supplement the record during the some seven-year interim. Indeed, it has always been the asylum seeker's burden to put forth sufficient evidence. See Vujisic v. INS,

224 F.3d 578, 580 (7th Cir. 2000) ("The applicant carries the burden of establishing by presenting specific facts that he has been the victim of persecution or has good reason to believe that he will be singled out for persecution."). We do not tread further because Meghani does not challenge the soundness of the rule in general, see Ladha v. INS, 215 F.3d 889, 899 (9th Cir. 2000) (citing Cordon-Garcia v. INS, 204 F.3d 985, 992 (9th Cir. 2000)) (stating that the Ninth Circuit disapproves of the corroboration rule and holding that corroboration of credible testimony is unnecessary); rather Meghani merely argues that given the time gap between his hearing and the BIA's decision, he ought to be given another opportunity to present evidence. We decline Meghani's request.

The real hurdle for Meghani is the high burden asylum applicants must clear to establish that they suffered persecution. Even with the corroboration of medical records confirming his wrist and shoulder were broken, Meghani would not have satisfied his burden of proving past persecution. The IJ so held and we agree. We have described persecution as "'punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate.'" Roman v. INS, 2000 WL 1779185, *5 (7th Cir. 2000) (citations omitted). The harm must constitute more than mere harassment. See id. at *6. Finding persecution ordinarily requires a determination that government authorities, if they did not actually perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victim. See id. "[C]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum." Mitev v. INS, 67 F.3d 1325, 1330 (7th Cir. 1995). Indeed, we have "recognized the hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." Id. at 1331.

Meghani testified as to one incident in which he believed he was persecuted. This incident occurred at the PPP office, where he was beaten by MQM members. Meghani's complaint about the police seems to be that they were ineffective, not that they were in cahoots with MQM. And, while the IJ found his account credible, it also found that it did not rise to the level of persecution. We agree that this incident was civil unrest between competing political factions not amounting to persecution. Further support that Meghani was not persecuted is that he resided in Pakistan, even in Karachi, for a good while after the beating (two years in the

aggregate) without incident. In sum, we cannot fault the BIA's finding that Meghani's experience did not amount to past persecution.

The second issue Meghani raises concerns his claim that he has a well-founded fear of future persecution. To establish a well-founded fear, Meghani must have shown that his fear of being singled out for persecution was subjectively genuine, and have garnered objective evidence justifying his fear. See Bhatt v. Reno, 172 F.3d 978, 981 (7th Cir. 1999). To satisfy the objective prong, Meghani must have brought forth "specific, detailed facts" supporting the reasonableness of his fear of being singled out for persecution. See id. at 982.

Meghani directs us to the BIA's opinion, which states:

In addition, [Meghani] has not provided background information that convinces the Board that PPP members are currently targeted for persecution in Pakistan and the government is unable or unwilling to prevent it. The Country Profile does not suggest that the PPP members are persecuted with impunity in Pakistan (see Exh. 3). We therefore agree with the Immigration Judge that the applicant has failed to satisfy his burden of proof . . . .

In his brief, Meghani argues: "The Board's decision contains no evidence about which country conditions, whether the ones in 1993 under which the IJ reviewed the case, or the ones in 2000, when the Board decided this case, were the basis of the instant Board decision." By citing Exhibit 3, we believe the BIA relied on the 1993 State Department advisory opinion submitted to the IJ to conclude that "PPP members are not persecuted with impunity." Meghani submits that the 1993 information is stale and ought not be used to assess current country conditions in deciding whether he has a well-founded fear of future persecution. Without citation, Meghani asserts that the BIA erred in not considering the 2000 report because it is "required to apprize itself of prevailing conditions in the country" (emphasis added). Meghani again asks us to remand so that the BIA can consider the U.S. Department of State, Country Reports on Human Rights Practices for 2000-- Volume II, at 2389-2434 (April 2000).

This issue undoubtedly arises due to the seven-year delay in ruling. We re-express our disesteem for the delays that plague INS proceedings. See, e.g., Dobrota v. INS, 195 F.3d 970, 973 (7th Cir. 1999); Asani v. INS, 154 F.3d 719, 726 (7th Cir. 1998); Salameda v. INS, 70 F.3d 447, 449 (7th Cir. 1995); Sivaaainkaran v. INS, 972 F.2d 161,

166 (7th Cir. 1992). Dispositive of Meghani's argument that the BIA erred in not considering the 2000 report is that it would have been impossible for the BIA to have considered it. The 2000 report was issued in April, while the BIA's opinion was issued in March, a month prior. In addition, we have recognized that in rendering its decision, the BIA may take administrative notice of changed country circumstances as long as it engages in individualized review of the applicant's case. See Vujisic, 224 F.3d at 582. However, we find no cases in which we held that the BIA is required to sua sponte take administrative notice of the most recent country report, and Meghani cites no cases holding such.

Therefore, we again decline Meghani's request to remand the case. Since the 2000 report was issued a month after the BIA rendered its decision, and we view our review as generally limited to the administrative record, we find the appropriate recourse for Meghani is to file a motion to reopen under 8 C.F.R. sec. 3.2, which would allow him to present any new evidence the 2000 report offers./1 See Sivaainkaran, 972 F.2d at 166. To our knowledge, Meghani has not motioned to reopen the case since the BIA issued its opinion and the 2000 report was published.

Meghani does not take issue with the remainder of the BIA's decision, so we need not address it. In his quest for asylum, Meghani is free to submit a motion to reopen the case to the BIA, presenting any evidence in the 2000 report that would support his claim that he will be singled out for future persecution. Finally, because we find that Meghani did not satisfy his burden for his asylum application, his withholding of deportation application is likewise denied because the burden of proof is even higher. See Ahmad, 163 F.3d at 460-61.

CONCLUSION

Therefore, the BIA's decision to deny review is

AFFIRMED.


/1 Given the frequent delays in INS proceedings, we have had to address the desire of applicants who want to present new evidence. We have handled this request in varying ways. We have declined to determine whether country conditions had changed and signaled the applicant to file a motion to reopen before the BIA. See Sivaainkaran, 972 F.2d at 166. We have issued a limited remand to permit the applicant to file a motion to reopen. See Asani, 154 F.3d at 726. Most recently, we have taken judicial notice of current country

conditions not presented to and considered by the BIA. See Dobrota, 195 F.3d at 973; but see Fisher v. INS, 79 F.3d 955, 963 (9th Cir. 1996) ("To the extent our prior decisions may be interpreted as authorizing us to take judicial notice of information not part of the administrative record or not previously submitted to the Board, they are overruled as inconsistent with the Act and prior precedent."). The parties have not argued the propriety of each procedure, and thus, we decline to address that question today.