

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2004

# Djoukouo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1111

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Djoukouo v. Atty Gen USA" (2004). *2004 Decisions.* Paper 685.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/685

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1111

CLARISSE DJOUKOUO,
Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,
Respondent

On Petition for Review of an Order of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA No. A76-596-429)

Submitted Under Third Circuit LAR 34.1(a)
April 12, 2004

Before: RENDELL, COWEN and LAY*, Circuit Judges.

(Filed: May 25, 2004 )

OPINION OF THE COURT

_____

*Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by
designation.

RENDELL, Circuit Judge.

Clarisse Odette Djoukouo, a citizen of Cameroon, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying Djoukouo's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In so ruling, the BIA affirmed without opinion the findings of the Immigration Judge ("IJ") that Djoukouo lacked credibility because she offered inconsistent statements and because she failed to provide any reasonable explanation for the absence of corroborating evidence that might support her testimony. We have jurisdiction under 8 U.S.C. § 1252. We will deny Djoukouo's petition for review.

I.

Djoukouo was the sole witness at her asylum hearing and she provided a narrative of her experiences. In 1989, she married Prichar Norbert in Cameroon. Three years later, Norbert allegedly became an active party official with the Social Democratic Front ("SDF"), an opposition party in Cameroon. According to Djoukouo, members of the SDF are "threatened," "tortured," "jailed," and "some of them are even killed." As a result of his participation in the SDF, Norbert was terminated from his service as a public school teacher, and was subsequently arrested in 1995, along with his wife, Djoukouo. At the time of the arrest, Djoukouo claims to have been pregnant.

Djoukouo testified that she was chained, beaten, and starved during the three days of her subsequent imprisonment, and that she suffered a miscarriage when she was

2

released from custody.  Subsequently, her husband escaped from prison.

In 1997, Djoukouo was again arrested and questioned by authorities who were searching for her husband.  She told them that she had neither seen nor heard from her husband since his arrest in 1995.  Djoukouo was then imprisoned for another week.  She testified that she was repeatedly raped, beaten, and starved during this period of incarceration.

Djoukouo further stated that in May of 1998, a friend informed her that her husband was living and working in Gabon.  Her husband eventually sent for her and she traveled by car from Cameroon to Gabon.  At some point after she arrived in Gabon, Djoukouo's husband gave her travel documents which actually belonged to her sister.  Djoukouo testified that she did not ask her husband how he obtained the documents.

In December 1998, Djoukouo took the documents and traveled through France to the United States.  Upon her arrival, Djoukouo presented the documents to U.S. immigration officials.  At that point, she made no attempt to inform the officials that she was seeking asylum or that she had been persecuted in Cameroon.  Djoukouo was subsequently arrested.  Eventually, she sought relief from removal by filing an application for asylum, withholding of removal, and protection under the CAT.

In her oral decision, the IJ stated that she was unpersuaded by Djoukouo's testimony, partially because Djoukouo neglected to mention that she had been raped in both her application for asylum and during an interview with U.S. immigration officials.

3

In fact, the first time Djoukouo mentioned the sexual assaults was when she was called to the stand to testify. When asked why she had omitted this fact from her previous statements, Djoukouo replied that she "forgot" to mention it. In addition, the IJ was concerned about the lack of corroborating evidence in the case, including medical reports that would verify Djoukouo's allegations of rape; testimony or affidavits that would support Djoukouo's assertion that her husband was in fact affiliated with the SDF; some type of explanation as to why Djoukouo did not know how her husband obtained her sister's travel documents; and evidence that would support her general claim of abuse by Cameroon authorities. Additionally, the IJ was perplexed by the fact that Djoukouo had somehow obtained a valid passport of her own from Cameroon officials, during the time when Djoukouo claimed she was fleeing from the country.

On appeal, Djoukouo raises four arguments. First, Djoukouo contends that the IJ erred in her adverse credibility determination. Relatedly, she argues that the IJ erred in requiring corroborating evidence. Second, Djoukouo contends that the IJ erred by not considering the most current State Department Country Report. Third, she contends that the IJ erred in her determination that there was no evidence of torture in Cameroon. We consider each of these arguments in turn.[1]

---

[1]Djoukouo also contends that the BIA's summary affirmance procedure violates due process. However, since the filing of her brief, this Court has ruled that the BIA's streamling regulations do pass constitutional muster. See Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (en banc). Accordingly, we reject this argument.

II.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genuine fear of persecution, and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. The applicant's own testimony may be sufficient to establish eligibility for asylum, as long as the testimony is credible. See 8 C.F.R. § 208.13(a).

Our review is limited to ensuring that any findings are supported by substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). We may reverse the IJ's decisions only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III.

Djoukouo argues that the IJ improperly based the adverse credibility determination on the failure to mention her sexual assaults in both her asylum application and during the interview with immigration officials. Djoukouo contends that it is understandable that asylum seekers may be unwilling to speak of their traumatic experiences. Indeed, this Court has been sensitive to such concerns. In Zubeda v. Ashcroft, 333 F.3d 463, 476–77

5

(3d Cir. 2003), we observed that an IJ should be careful before placing too much weight on a discrepancy between an asylum application and subsequent testimony. We noted that petitioners may not be able to speak of certain events as they may be "haunted by [] traumatic memories." Id. at 477. In this case, while Djoukouo did testify that she neglected to mention her rape in her asylum interview due to her shame, her testimony as to the failure to mention her rape in her asylum application was simply unpersuasive. When asked for an explanation for the omission, she testifed: "I don't know. I just forgot." The IJ reasonably found this justification wanting.

Relatedly, Djoukouo contends that the IJ erred by requiring corroborating evidence. The BIA has set out a three-part test to determine when an IJ may reasonably require corroboration. See Abdulai v. Ashcroft, 239 F.3d 542, 554. To determine whether an expectation of supporting evidence is reasonable, we look for: "(1) An identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Id.; see also In re S-M-J, 21 I & N Dec. 722, 725 (BIA 1997). Examples of supporting evidence that may be reasonably expected include medical records, evidence of a petitioner's place of birth, and media accounts of large events, such as demonstrations. In re S-M-J, 21 I & N Dec. at 725.

Here, the IJ noted that Djoukouo had not provided any medical records to

6

corroborate her testimony of her rape or either of her two hospitalizations. Likewise, the IJ stated that in light of the SDF party's significant presence in Cameroon, it should have been reasonable for Djoukouo to be able to provide some corroborating evidence of her husband's membership and involvement in the party. The IJ also recognized that, although Djoukouo did provide a letter from a childhood friend, the letter failed to corroborate any of her personal experiences or her husband's political activities. Further, the IJ noted that upon questioning at the hearing, Djoukouo was unable to provide any explanation as to why she did not provide the corroborating evidence. In light of these factors, we conclude that the IJ's expectation of corroborating evidence was reasonable.

Given Djoukouo's failure to adequately explain discrepancies in her asylum petition, including her failure to mention the rape before her asylum hearing, along with her inability to adduce supporting evidence, we conclude that the IJ's adverse credibility determination rested on substantial evidence.[2]

## IV.

The IJ evaluated Djoukouo's claims in light of the State Department's 1996 Cameroon Profile of Asylum Claims & Country Conditions and the 1996 Country Reports for Gabon and Cameroon. Djoukouo argues however that these reports were

---

[2]Given the more stringent standard, we reject Djoukouo's appeal of the denial of her withholding of removal claim as well. See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir.2003) (noting that the standard is a "clear probability" that the applicant will be persecuted if returned to his native country).

7

outdated and that the IJ should have considered the 1998 Country Report for Cameroon, which, she maintains, details recent incidences of tension between the opposition party and the government.

We begin by noting that while Djoukouo admonishes the IJ for not reviewing the 1998 Report, she does not even assert that the 1996 Report was devoid of similar instances of tension between the government and the opposition party. Second, although Djoukouo has provided this Court with the 1998 Country Report, the scope of our review is limited to the administrative record. See 8 U.S.C. § 1252(b)(4)(A). Had Djoukouo believed the 1998 Report was helpful to her application, she could have entered it into evidence; it is the applicant of course that bears the burden to establish an asylum claim. See 8 C.F.R. § 209.13(a). In any event, Djoukouo does not refer us to any authority obligating an IJ to consider the most up-to-date Country Reports. See Meghani v. INS, 236 F.3d 843, 848 (7th Cir. 2001) ("we find no cases in which we held that the BIA is required to sua sponte take administrative notice of the most recent country report"). Thus, Djoukouo has not shown us how the IJ erred in this respect.

V.

Finally, Djoukouo argues that the IJ erred in ruling that there is no evidence of torture in Cameroon, an argument related to the denial of Djoukouo's claim under the Convention Against Torture.

The regulations which implement the CAT provide that "the burden of proof is on

8

the applicant to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The IJ determined that there was insufficient evidence to demonstrate that Cameroon authorities would detain Djoukouo upon return. Further, while acknowledging that Cameroon commits human rights violations, the IJ concluded that the evidence did not establish that torture was consistently "utilized at [sic] the method of persecuting others . . . ." While Djoukouo refers us to portions of country reports that refer to various instances of torture in Cameroonian prisons, these incidences do not by themselves establish that it is more likely than not that Djoukouo will be tortured or even detained upon reentry. Thus, the IJ's denial of Djoukouo's CAT claim rests on substantial evidence.

VI.

Accordingly, we will DENY the petition for review of the IJ's decision.