NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0561n.06
Filed: August 4, 2006

No. 05-3692

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ZOICA PAPAPANO,                          )
                                         )     ON  APPEAL  FROM  THE
        Petitioner,                      )     BOARD  OF  IMMIGRATION
                                         )     APPEALS
v.                                       )
                                         )          **O P I N I O N**
ALBERTO GONZALES,                        )
United States Attorney General,          )
                                         )
        Respondent.                      )


**BEFORE:**    **DAUGHTREY and COOK, Circuit Judges; COLLIER, District Judge.**[*]

**CURTIS L. COLLIER, District Judge.**  Petitioner Zoica Papapano ("Papapano") appeals the Board of Immigration Appeals' ("BIA") denial of her motion to reopen immigration proceedings after the denial of her application for asylum and order of removal by the Immigration Judge ("IJ") and the BIA.  Because we conclude the BIA's decision was not an abuse of discretion, we **AFFIRM** its decision to deny the motion to reopen.

## I.  FACTS AND PROCEDURAL HISTORY

Papapano entered the United States legally at Detroit, Michigan on August 18, 1999 on a tourist visa for a period not to exceed six months, from her country of citizenship, Albania.

_____

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

Papapano remained in the United States beyond six months, and applied for asylum on August 5, 2000. Papapano alleged she had been persecuted based on her religion, membership in a particular social group, and political opinion. On September 28, 2000, the former Immigration and Naturalization Service ("INS") issued a Notice to Appear to Papapano, charging her with being an alien subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B).

Papapano admitted the allegations and conceded removability on November 17, 2000. The IJ held a hearing on February 12, 2001, at which Papapano testified. According to her testimony, as an Albanian of Greek heritage, Papapano characterizes herself as a minority in Albania. From 1990 to 1996, Papapano organized a pro-democracy group with her parents, gave speeches, and participated in demonstrations; they were arrested and sometimes beaten to the point of hospitalization, and jailed many times but never charged with crimes. Her mother died after one of the beatings. In 1998, Papapano was arrested and held for six weeks but not beaten following her participation in a hunger strike and demonstration; again, no charges were filed against her. After that, the government threatened Papapano and her house was partially destroyed by the police whom she said were trying to rid Albania of minorities such as herself.

In May 1999 Papapano decided to leave Albania because she was scared of the threats, and eventually obtained a tourist visa to come to the United States. Papapano's father remains in Albania, and she testified at the hearing he told her nothing had changed in the country since she left in 1999. Papapano presented no documentary evidence and no witnesses at the hearing to support her claims of her and her family's arrests and beatings or her mother's death.

The IJ issued an oral decision finding Papapano was not altogether credible regarding her alleged persecution and had failed to corroborate her testimony with documentary evidence. The

IJ also found conditions in Albania had changed for the better since Papapano left the country, she had not shown she would be persecuted on account of a recognized asylum basis if she returned, and denied her request for asylum and withholding of removal.

Papapano appealed this ruling to the BIA, which found her testimony was credible and did establish past persecution that gives rise to a rebuttable presumption of a well-founded fear of future persecution if she returned. However, the BIA held that presumption was rebutted by changed conditions in Albania since her departure in 1999, and Papapano no longer had a well-founded fear of future persecution if she returned. Therefore, the BIA dismissed her appeal on August 7, 2003. Papapano did not appeal this decision.

On February 15, 2005, however, Papapano filed a "Motion to Reopen to Present New Evidence and Reconsider or Remand to Immigration Judge" with the BIA. In this motion, Papapano sought to present new evidence, particularly the affidavit of Mr. Prenk Camaj as well as her own affidavit and several country reports on Albania, to show country conditions had changed for the worse in Albania since the time of the IJ and BIA's decisions such that she again had a fear of persecution were she to return there.

The BIA, without analysis, found Papapano failed to show sufficiently changed circumstances, her fear of return to Albania was based on crime (kidnapping and forced prostitution), and she had failed to show she would be singled out for persecution. Accordingly, the BIA denied her motion to reopen on May 20, 2005.

Papapano now appeals the BIA's denial of her motion to reopen. The Court held oral argument on July 19, 2006, but Papapano's counsel failed to appear, therefore he has waived oral

-3-

argument in this matter.[1]

## II. STANDARD OF REVIEW

Denial of a motion to reopen is reviewed for an abuse of discretion. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003) (citing *INS v. Doherty*, 502 U.S. 314, 324, 116 L. Ed. 2d 823, 112 S. Ct. 719 (1992)). It is an abuse of discretion if the BIA "offers no rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (internal quotation marks omitted).

This type of review is "exceedingly narrow" but the Court may reverse the BIA if it failed to consider all relevant facts and circumstances, as such a decision would be arbitrary and capricious. *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004).

## III. ANALYSIS

### A. Motion to Reopen

A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). It "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . ." *Id.*

Generally, a party may file only one motion to reopen proceedings, and that motion must be filed within 90 days of the final administrative decision. 8 C.F.R. § 1003.2(c)(2). However, that

---

[1] Papapano's counsel, Carl M. Weideman, III, sent a fax to the court shortly after the clerk's office called to locate him after he had not appeared for argument, requesting the Court excuse his absence and accept his apologies. He indicated the date for argument in this case "was not put in my date book and the Immigration Court scheduled a hearing for one of my other clients for this afternoon."

time limit does not apply where the motion is "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing . . ." 8 C.F.R. § 1003.2(c)(3)(ii).

In her motion to reopen, which was far outside the 90-day period after the administrative decision and therefore must be based on changed circumstances in her country, Papapano sought to present new evidence to show country conditions had worsened in Albania since the time of the IJ's decision such that she again had a fear of persecution were she to return there. Papapano presented two bases for a fear of persecution: (1) her past participation in pro-democracy activities against the current socialist government, and (2) risk to her daughter and herself of human trafficking and forced prostitution.

Papapano attached to her motion the affidavit of Mr. Prenk Camaj, whom she calls an "expert in the Balkan region and particularly in Albanian political affairs and history". Mr. Camaj stated from 1997 to present, the conditions in Albania have been tragic because of the Socialist party, their agents, and "gangsters that are part of the present government". Mr. Camaj also stated he met with Albania's president and "other personnel" in 2003 and was told members of the pro-democracy party, including Papapano, "are target (sic) to be eliminated by government agents or their gangsters". Mr. Camaj opined since Papapano left in 1999, "country conditions have consistently changed for the worse" and the U.S. State Department country reports on Albania are "tainted and misleading" such that IJs should not consider them. Mr. Camaj also mentioned problems with the "trafficking of persons, especially women and children . . ." and since Papapano "is still a young and very attractive woman . . . she undoubtedly would be targeted for persecution for 2 reasons, vengeance of Socialist Party secret police and the other is for the profiteers working

with the government who will kidnap her and her American born daughter to be sold into prostitution and trafficking of children to fill the coffers of criminals and the Socialist Party".

Papapano also attached her own affidavit to the motion, reiterating her testimony at the hearing about past persecution and stating present conditions in Albania are not safe for women and children because of "widespread trafficking of women and children for illicit purposes including prostitution and rape". Papapano related the story of a family she knew whose daughter was kidnapped in 2003 from Papapano's hometown. Finally, Papapano presented several country reports on Albania, including the 2003 U.S. State Department Country Report on Human Rights ("Country Report") and the 2004 U.S. State Department Profile of Asylum Claims and Country Conditions ("Profile").

**B.      BIA's Bases for Denying Papapano's Motion to Reopen**

**1.      Failure to Present Changed Circumstances**

The regulations providing for a motion to reopen outside the 90-day time limit require "new facts" and do not allow the motion to be granted unless the evidence presented is "material and was not available and could not have been discovered or presented at the former hearing . . ." 8 C.F.R. § 1003.2(c)(1).

The BIA found Papapano's motion did not "state sufficient changed circumstances," and referred approvingly to the Government's brief on that issue. In its brief, the Government pointed out the affidavits submitted in support of Papapano's motion show unfavorable conditions that had existed since the original hearing in front of the IJ, rather than any "new" or changed circumstances. The BIA was correct in finding Papapano did not present any changed conditions in her motion to reopen; the affidavits she included referred to unfavorable conditions on many dates in the 1990s,

before Papapano even left Albania, rather than focusing on how conditions had changed for the worse since the hearing in front of the IJ in 2001. Additionally, Papapano did not submit any documents to corroborate or support these affidavits, which are essentially mere opinions.

This reason for denial is supported by the record, is a rational explanation, and alone would be sufficient for denial of Papapano's motion to reopen, therefore the BIA did not abuse its discretion in basing its denial in part on this ground. *Doherty*, 502 U.S. at 324.

## 2. Failure to Establish Prima Facie Case for Asylum

A motion to reopen may also be denied for failure to establish a prima facie case. *See Doherty*, 502 U.S. at 323 ("there [are] 'at least' three independent grounds on which the BIA might deny a motion to reopen– failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought") (quoting *INS v. Abudu*, 485 U.S. 94, 108 S. Ct. 904, 99 L. Ed. 2d 90 (1988)). Since Papapano was seeking asylum, in order to establish a prima facie case, she was required to show she is a "refugee," in that she has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

## a. Individualized Fear of Persecution, Political Opinion

The BIA found Papapano "failed to establish she would be singled out for persecution." Under this theory of establishing a prima facie case, the fear of persecution must be individualized; "conditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum . . ." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir.

-7-

2004)(quoting *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001)). A showing of past persecution establishes a presumption of future persecution, but this may be rebutted by the Government's showing changed country conditions such that the fear of persecution is no longer well-founded. 8 C.F.R. § 1208.13(b)(1).

The Government in its brief argued Papapano cannot prove her prima facie case individually, as the new evidence presented with her motion to reopen establishes, if anything, general conditions of civil unrest and human rights violations experienced by the population as a whole, but nothing relating to her specifically. However, this argument fails to consider Papapano's past persecution (individually) on account of her political beliefs, which gives rise to a rebuttable presumption of a fear of future persecution. 8 C.F.R. § 1208.13(b)(1).

The BIA in Papapano's original appeal held she had established past persecution on account of her political opinion, giving rise to the presumption of a well-founded fear of future persecution, but also found the country conditions had changed since she left such that the presumption had been rebutted. This holding was based on both the U.S. State Department Country Report issued in 2003 and the U.S. State Department Profile issued in 2001. In addition to the affidavit of her expert and herself, Papapano presented those same documents (although the Profile was issued in 2004 and included new information about human trafficking in young women) in her motion to reopen. Papapano presented no other documentary evidence to show the country conditions had worsened since the IJ's finding country conditions had improved in 2001 and the BIA's same finding in 2003.

The very country reports Papapano submitted with her motion to reopen actually support a finding conditions in the country have drastically improved, resulting in far fewer cases of political persecution. As Papapano did not present any compelling evidence conditions actually have

changed for the worse, the presumption is rebutted, and Papapano has not shown her fear of persecution because of her political beliefs remains well-founded. Papapano cannot meet the prima facie requirements on this claim.

Because Papapano cannot establish a prima facie case for the asylum relief she sought, *Doherty*, 502 U.S. at 323, the BIA gave a rational explanation and did not abuse its discretion in denying Papapano's motion to reopen on this ground. *Id.* at 324.

**b.      Individualized Fear of Persecution, Membership in a Particularized Social Group, Young Women**

As noted above, Papapano can show she meets the definition for "refugee" for her prima facie case if she has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).[2] Papapano in the affidavit attached to her motion to reopen stated she feared persecution "because of my gender and I will not be able to protect myself or my daughter from the danger of criminal elements which the Socialist government is not willing or able to control". The BIA implicitly rejected Papapano's alternate argument she had a well-founded fear of persecution on account of her "membership in a particular social group," 8 U.S.C. § 1101(a)(42), *i.e.*, women likely to be kidnapped or forced into prostitution,  by basing its ruling in part on Papapano's fear of return to Albania being based on

---

[2] Courts have held a general fear of crime in the country of origin is not relevant to a fear of persecution qualifying an alien as a "refugee." *See Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001) (Ukrainian citizen's fears of crime and economic and environmental problems "are legitimate but not relevant to his fear of future political persecution"); *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001) ("conditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum"); *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) ("mere generalized lawlessness and violence between diverse populations . . . generally is not sufficient" to obtain asylum); *Mitev v. INS*, 67 F.3d 1325, 1330-31 (7th Cir. 1995) ("unpleasant and even dangerous conditions do not necessarily rise to the level of persecution"). Therefore, the BIA's denial of Papapano's motion to reopen on the ground her fear of return to Albania was based on crime, i.e., kidnapping and forced prostitution, was a rational explanation, *Denko*, 351 F.3d at 723.

crime, that is, kidnapping and forced prostitution. Papapano has not shown any evidence of past persecution on this ground, therefore there is no presumption of future persecution.

"The BIA has defined a 'social group' to be 'a group of persons all of whom share a common, immutable characteristic.'" *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005) (quoting *In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985) (holding Salvadoran taxi cooperative did not constitute a particular social group, even though the members were being persecuted for refusing to participate in work stoppages, because the drivers could escape persecution by changing jobs), overruled on other grounds by *In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987)). "Whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* (quoting *Acosta*, 19 I. &. N. Dec. at 233; citing *Castellano-Chacon v. INS*, 341 F.3d 533, 546, 549 (6th Cir. 2003) (adopting BIA's definition of a "social group," and holding tattooed youth fall outside of that definition).

The 2004 U.S. State Department Profile does indicate trafficking in women and children is a newer phenomenon since Papapano departed in 1999. However, Papapano did not present any compelling precedent, from this circuit or any others, to support her argument violence against women in Albania provides her with a well-founded fear of persecution were she to return. To the contrary, this circuit squarely addressed this argument in *Rreshpja* and rejected the contention "young (or those who appear to be young), attractive Albanian women who are forced into prostitution" is a "particular social group" within the meaning of 8 U.S.C. § 1101(a)(42). *Id.* The court held this did not qualify as a "particular social group" both because it was a frowned-upon "generalized, sweeping classification" and because it was a circular definition, defining a group by

-10-

those who suffer persecution.  *Id*. at 555-56.

Since this circuit has explicitly denied the claim Papapano raised in her motion to reopen, it was rational for the BIA to implicitly deny her claim on this ground.  *Denko*, 351 F.3d at 723.

## IV.  CONCLUSION

Because the BIA offered more than one rational explanation for its decision on Papapano's motion to reopen, all of which were supported by the law, and Papapano has not shown it inexplicably departed from established policies or rested on an impermissible basis such as invidious discrimination against a particular race or group, *Denko*, 351 F.3d at 723, we **AFFIRM** the BIA's denial of Papapano's motion to reopen.