**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-1816 & 15-2410
_____

IBRAHIM ATANDA,
                                        Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                    Respondent
_____

On Petitions for Review of Orders of the
Board of Immigration Appeals
(Agency No. A205-671-429)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 28, 2015
Before:  CHAGARES, KRAUSE and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 30, 2015)
_____

OPINION[*]
_____

PER CURIAM

Ibrahim Atanda, proceeding pro se, petitions for review of two orders issued by

the Board of Immigration Appeals ("BIA").  Atanda's first petition challenges the BIA's

March 17, 2015 decision, which upheld the Immigration Judge's ("IJ") denial of

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Atanda's application for relief from removal. Atanda's second petition challenges the

BIA's May 15, 2015 decision, which denied his motion to reconsider that earlier order or

reopen his removal proceedings. For the reasons that follow, we will deny both petitions.

I.

Atanda is a citizen of Nigeria who arrived in the United States in January 2013. In

June 2013, the Department of Homeland Security charged him with being removable for

not possessing valid entry documents when he applied for admission, see 8 U.S.C.

§ 1182(a)(7)(A)(i)(I), and seeking to procure a visa or admission into the United States

by fraud or willful misrepresentation of a material fact, see 8 U.S.C. § 1182(a)(6)(C)(i).

Atanda, represented by counsel, conceded those charges and applied for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT"). In

support of the application, Atanda claimed that he had been mistreated in Nigeria by his

family on account of his conversion from Islam to Christianity in 2012.[1]

In October 2013, the IJ denied Atanda's application. Although the IJ found

Atanda's testimony to be credible and corroborated by record evidence, the IJ concluded

that the application lacked merit. With respect to Atanda's asylum claim, the IJ found

that the alleged events in Nigeria, even when considered cumulatively, did not rise to the

level of past persecution. As for Atanda's fear of future persecution, the IJ found that this

fear was not objectively reasonable because Atanda had not demonstrated (1) "that the

_____

constitute binding precedent.

[1] Atanda also alleged that, on one occasion, he was chased and beaten by a group of

2

persecution he fears is at the hands of the government or persons that the government is unwilling or unable to control," (Administrative R. in C.A. No. 15-2410 at 183 [hereinafter A.R.]), or (2) "that his fear of persecution is countrywide," (id. at 184). The IJ explained that, because Atanda's asylum claim failed, his withholding of removal claim necessarily failed, too. Lastly, the IJ determined that the allegations in support of Atanda's CAT claim "do[] not rise to the level of torture," and that "his harm is not instigated by or with the consent or acquiescence of a current public official or persons acting in an official capacity." (Id. at 188.)

Atanda, through counsel, appealed to the BIA. In February 2014, the BIA upheld the IJ's denial of Atanda's application and dismissed the appeal. Atanda then filed a pro se petition for review in this Court. In September 2014, we granted that petition, concluding that the BIA had mistakenly applied the "deferential clear error standard in at least one, if not two, instances when ruling on Atanda's appeal," and that this error was not harmless. Atanda v. Att'y Gen., 579 F. App'x 96, 98-99 (3d Cir. 2014) (per curiam) [hereinafter Atanda I]; see id. at 99. Specifically, we explained that the BIA had erred by reviewing for clear error the IJ's determination that Atanda's fear of future persecution was not objectively reasonable. Id. at 99. We further explained that the BIA may have also erred in exercising clear error review over Atanda's CAT claim:

> [T]he IJ denied CAT relief for two reasons: (1) Atanda's allegations did not rise to the level of torture; and (2) the alleged harm [was] not instigated by or with the consent or

Muslim youth.

3

> acquiescence of a current public official or persons acting in an official capacity. On appeal, the BIA did not make clear whether it was upholding the denial of CAT relief based on the first reason, the second reason, or both. If the BIA intended to rely on the first reason, it erred by failing to review that aspect of the IJ's decision under a de novo standard.

Id. (alteration in original) (internal quotation marks and citation omitted). In light of the above, we vacated the BIA's decision and remanded for further proceedings. Id. at 100. In doing so, we explained that the BIA did not need to revisit its decision upholding the IJ's *past* persecution finding because Atanda had not demonstrated that the record compelled disturbing that finding. Id. at 99.

Our mandate in Atanda I issued in November 2014. Over the next several months, there was no activity in Atanda's case before the BIA. In March 2015, the New York-based Legal Aid Society ("LAS") entered its appearance with the BIA on Atanda's behalf. Six days later (and before LAS filed anything further), the BIA issued a decision that once again dismissed Atanda's appeal from the IJ's decision. The BIA, this time applying de novo review, agreed with the IJ that Atanda's fear of future persecution was not objectively reasonable. In reaching this conclusion, the BIA relied on an excerpt from its prior decision, which in turn had relied on the U.S. State Department's 2012 International Religious Freedom Report for Nigeria ("the 2012 Report"). The BIA's new decision also clarified its analysis of Atanda's CAT claim:

> First, we conclude de novo that [Atanda] has not established past torture. Second, we conclude that the [IJ's] finding that the harm [Atanda] fears will not be instigated by or with the

4

consent or acquiescence of a current public official or person acting in an official capacity is not clearly erroneous.

(A.R. at 84-85.) In support of its conclusion on the CAT claim, the BIA again cited the 2012 Report.

Shortly thereafter, Atanda filed a new pro se petition with this Court, seeking review of the BIA's March 2015 decision. That petition was assigned C.A. No. 15-1816. Around the same time, LAS filed a motion with the BIA on Atanda's behalf, seeking to reconsider the BIA's March 2015 decision and, in the alternative, reopen his removal proceedings. In support of that motion, Atanda argued that the BIA should have considered, sua sponte, the State Department's *2013* International Religious Freedom Report for Nigeria ("the 2013 Report") — that report was issued in July 2014 and was not part of the administrative record — instead of relying on the 2012 Report. Atanda further argued that the 2013 Report, along with "other, more-recent, readily available reports from United States government sources," reflected "deteriorating conditions in Nigeria with respect to religious freedom." (Id. at 17.)

On May 15, 2015, the BIA denied Atanda's motion. In rejecting his request to reconsider, the BIA explained that an alien bears the burden of demonstrating relief from removal, and that the agency "is under no requirement to independently conduct research to locate and consider documents outside of the record of proceedings which may pertain to a[n] [alien's] claim." (Id. at 3.) As for Atanda's request to reopen, the BIA stated that reopening was not warranted because his extra-record evidence was not material and did

5

not establish a prima facie case for any relief from removal.

Atanda subsequently filed another pro se petition for review, this time challenging the BIA's May 2015 decision. That petition was assigned C.A. No. 15-2410 and consolidated with the petition at C.A. No. 15-1816. These two petitions are now ripe for disposition.[2]

II.

We begin our review with Atanda's petition challenging the BIA's March 2015 decision upholding the denial of his application for relief from removal. In support of that petition, Atanda does not attack the BIA's evaluation of the evidence that was in the record at that time.[3] Instead, he argues that the BIA erred by not considering, sua sponte, extra-record evidence (the 2013 Report) before issuing its March 2015 decision.

Atanda's argument is unpersuasive. He himself bore the burden of establishing his eligibility for asylum, withholding of removal, and CAT relief. See Toure v. Att'y Gen., 443 F.3d 310, 316-17 (3d Cir. 2006). After we remanded his case to the BIA, a number of months passed before the BIA issued its new decision. During that time, Atanda could have attempted to supplement the administrative record with the 2013 Report. However, he failed to do so.[4] To be sure, the BIA may sua sponte take

---

[2] We have jurisdiction over these two petitions pursuant to 8 U.S.C. § 1252(a)(1).

[3] As a result, he has waived that issue. See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004).

[4] We recognize that Atanda was detained during that time, and that he was proceeding pro se until shortly before the BIA issued its March 2015 decision. That said, it appears that Atanda could have filed a pro se motion to supplement the administrative record

administrative notice of a country report that is not part of the record.  See 8 C.F.R.

§ 1003.1(d)(3)(iv).  But that regulation merely gives the BIA *permission* to do so, see id.,

and Atanda has not cited any authority that *requires* the BIA to do so, cf. Meghani v.

INS, 236 F.3d 843, 848 (7th Cir. 2001) ("[W]e find no cases in which we held that the

BIA is *required* to *sua sponte* take administrative notice of the most recent country

report, and [petitioner] cites no cases holding such.").  Accordingly, we need not disturb

the BIA's March 2015 decision.

We now turn to Atanda's petition challenging the BIA's May 2015 decision

denying reconsideration and reopening.  We review that denial for abuse of discretion,

see Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011), and we review the BIA's

factual findings underlying that decision for substantial evidence, see Shardar v. Att'y

Gen., 503 F.3d 308, 311 (3d Cir. 2007).  Under the substantial evidence standard, we

must upholding the BIA's findings "unless the evidence not only supports a contrary

conclusion, but compels it."  Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003)

(quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001)).

We first examine Atanda's request for reconsideration.  "The BIA has described a

motion for reconsideration as a 'request that the Board reexamine its decision in light of

additional legal arguments, a change of law, or perhaps an argument or aspect of the case

which was overlooked.'"  Castro v. Att'y Gen., 671 F.3d 356, 364 (3d Cir. 2012)

---

while he was detained.  Furthermore, LAS could have filed a counseled motion to
supplement the record when it entered its appearance on Atanda's behalf.

(quoting In re Ramos, 23 I. & N. Dec. 336, 338 (BIA 2002)). Here, Atanda argues that the BIA's March 2015 decision overlooked the 2013 Report. But as we explained above, that report was not part of the administrative record at that time, and Atanda has not cited any authority that required the BIA to consider that extra-record evidence sua sponte. Accordingly, the BIA did not abuse its discretion in denying his request for reconsideration.

As for Atanda's request for reopening, the BIA may deny such a request if the agency concludes that "(1) the alien has not established a *prima facie* case for the relief sought; (2) the alien 'has not introduced previously unavailable, material evidence'; or (3) in the case of discretionary relief (such as asylum), the alien would not be entitled to relief even if the motion was granted." Caushi v. Att'y Gen., 436 F.3d 220, 231 (3d Cir. 2006) (quoting INS v. Abudu, 485 U.S. 94, 104 (1988)). "To meet the materiality requirement, the [alien] must allege facts that would be sufficient, if proved, to change the result of [his] application." Khan v. Att'y Gen., 691 F.3d 488, 496 (3d Cir. 2012) (internal quotation marks omitted).

In this case, the BIA concluded that Atanda's motion to reopen should be denied because, inter alia, his new evidence was not material. That decision was not an abuse of discretion.[5] Although Atanda takes issue with the BIA's finding that the 2013 Report did not identify any material changes in Nigeria when compared to the 2012 Report, he has

---

[5] In light of this conclusion, we need not review the BIA's determination that Atanda's motion to reopen also failed to make out a prima facie case for relief from removal.

8

not demonstrated that a review of those reports *compels* a contrary conclusion. See

Zubeda, 333 F.3d at 471.[6]  Additionally, to the extent that Atanda's new evidence

referred to the "growing threat" of the terrorist organization known as Boko Haram, (see

A.R. at 4), we agree with the BIA that this evidence was not material to Atanda's case

because none of that evidence indicates that Boko Haram has made incursions in the

southern portion of Nigeria (the region from which Atanda hails).[7]

In light of the above, we will deny both of Atanda's petitions for review.

---

[6] The two reports are both at least nine pages long.  In arguing that they are materially different from one another, Atanda points to four brief excerpts (none of which is longer than two sentences) in which the language of one report is not identical to the other.  We have considered these excerpts but we are not persuaded that they compel the conclusion that the 2013 Report reflects a material worsening of country conditions in Nigeria.

[7] Atanda claims that the persecution he fears from his family prevents him from safely returning to the southern part of Nigeria.  But the IJ and the BIA have already determined that those fears are not objectively reasonable, and Atanda has waived his right to challenge that determination here.  See supra p.6 & n.3.

9